282 A.2d 584.

BEVERLY ANN PICKERING *vs.* AMERICAN EMPLOYERS INSURANCE CO. *et al.*

OCTOBER 13, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. On February 28, 1965, the plaintiff was a frontseat passenger in an automobile which was being operated by her friend, Alice E. Lovell. The Lovell car was stopped at a stop sign when it was struck in the rear by a taxicab. The force of the collision threw the plaintiff

up against the dashboard and then catapulted her back into the rear portion of the car. The impact of the plaintiff as she struck the upper part of the front seat caused it to become dislodged. The plaintiff's injuries were such that she was hospitalized on two separate occasions and treated by physicians for an extended period of time. She also experienced a loss in her income.

The plaintiff began to seek redress for her injuries by bringing a negligence action against the taxi's owner and its driver. She also named Alice as a party defendant. Her complaint was filed in the Superior Court on February 16, 1967. On July 31, 1967, it was disclosed in a reply given to an interrogatory asked of the taxi driver that the cab was insured by the Liberty Mutual Insurance Company. The limits of the policy were $5,000 for bodily injury per person and $10,000 per accident. Thereafter, plaintiff advised her insurer, London Guarantee & Accident Co., Ltd., that she was making a claim against it under the uninsured motorists provisions of her automobile liability policy because the cab's insurance coverage provided less than the $10,000/20,000 minimum required by the appropriate provisions of the Rhode Island financial responsibility law. Later, Liberty Mutual paid plaintiff the full $5,000 due under its policy. On February 21, 1968, the negligence action was dismissed with prejudice as to the cab owner and its driver. A few days earlier plaintiff, on her own motion, submitted to a voluntary dismissal of her suit against Alice. Three months later, on May 20, 1968, this action was commenced. In it, plaintiff alleges that her injuries were caused by the negligent operation of an uninsured automobile and she seeks damages under the uninsured motorists provisions of her policy and the policy issued Alice by the American Employers Insurance Company. Hereafter, we shall refer to plaintiff's insurer as London and where applicable, we shall call Alice's insurer American.

A hearing was held before a Superior Court justice who thereafter filed a rescript wherein he found that plaintiff had sustained damages in the amount of $25,000. He credited both insurers for the $5,000 paid by Liberty Mutual and then ordered each insurer to pay plaintiff the sum of $10,000. American[1] has paid the $10,000. London, however, has taken this appeal. Before us, it has briefed and argued a number of reasons why it is not liable to its insured. For ease of discussion, we have categorized its contentions into four issues. They concern (1) the status of the cab; (2) the statute of limitations; (3) the amount, if any, due plaintiff; and (4) plaintiff's failure to abide by the policy provisions. We shall discuss the issues thus framed in the order we have listed them.

I

The Status of the Cab.

London argues that the taxi was not an uninsured vehicle because, at the time of the collision, the limits set forth in the Liberty Mutual policy were in compliance with the statutes that govern the operation of taxicabs and other public motor vehicles in this state. G. L. 1956, §39-14-18[2] provided that the owner of such a vehicle was required to obtain a liability insurance policy containing bodily injury limits of $5,000/10,000. The defendant argues that the cab's status should be determined by the "taxicab statute" rather than the statutes governing the issuance of uninsured motorists insurance coverage. We disagree.

Section 39-14-18 had its inception in 1929 when the Gen-

---

[1]Originally, American had filed a claim of appeal from the Superior Court's judgment. Later, a stipulation was entered discontinuing its appeal. It should also be noted that during the pendency of this appeal, Beverly died and her administrator was substituted as party plaintiff. Her death was not related in any way to the injuries involved in this suit.

[2]In 1968, this section was amended so that the minimum coverage was raised to $10,000/20,000.

eral Assembly adopted P. L. 1929, chap. 1423. This statute requires a taxicab owner to procure a liability policy. It was enacted at a time when an automobile was considered as a luxury rather than as a necessity. In those days nobody foresaw the social and economic havoc that has been wrought by the presence on our highways of the uninsured motorist. The legislation requiring automobile insurance companies doing business in this state to offer a willing motorist the opportunity to recover damages for his bodily injuries, which are solely attributable to the negligence of the uninsured motorist, first appeared on the statute books of this state in 1962.[3] While both statutes provide compensation for bodily injury sustained as the result of the negligent operation of a motor vehicle, they serve different purposes. Uninsured motorists insurance is not liability insurance. It does not undertake to protect the insured against liability he may incur to others but rather it compensates him for a loss caused by a specific class of tort-feasors—the uninsured. *Kirouac* v. *Healey,* 104 N. H. 157, 181 A.2d 634. On the other hand, the insurance required by the taxicab statute affords the insured protection, not compensation. The statute which gives an opportunity to be compensated for injuries caused by the negligent operation of an uninsured motor vehicle is today known and cited as G. L. 1956 (1969 Reenactment) §27-7-2.1.[4] We have previously described the uninsured automobile encompassed by §27-7-2.1 as being a motor .vehicle which at the time of the collision is not covered by a liability policy in the minimum limits mandated by §31-31-7. *Allstate Ins. Co.* v. *Fusco,* 101 R. I. 350, 223 A.2d 447. The taxi that struck Alice's car is just such a vehicle.

It would be completely unrealistic to hold that the Leg-

[3]P. L. 1962, chap. 161.

[4]See Appendix.

islature, when it permitted the members of the public to obtain uninsured motorists coverage, would deny them the benefits due thereunder if the damages were caused by an underinsured vehicle such as the taxi insured by Liberty Mutual. This is in accord with the principle that statutes which are not inconsistent with one another and which relate to the same subject matter should be considered together so that they will harmonize with each other and be consistent with their general object and scope even though they contain no reference to one another and were passed at different times. *Providence Teachers Union* v. *School Committee,* 108 R. I. 444, 276 A.2d 762.

The plaintiff's insurer also alleges that in the Superior Court there was a failure of proof on the issue of whether the cab was an uninsured motor vehicle. This assertion is based on the theory that it was up to plaintiff to show that the cab had no other liability insurance over and above that supplied by Liberty Mutual which might be applicable to the February 1965 rear-end collision. We find this argument to be devoid of any merit. When plaintiff introduced Liberty Mutual's policy, she had established her right to proceed against her insurer. Thereafter, it became London's burden to show that there was other insurance applicable to the cab which, when added to Liberty Mutual's $5,000, would take the cab out of the uninsured classification.

## II

### The Statute of Limitations.

This suit was begun more than three years after plaintiff was injured. Her insurer maintains that this action is one for personal injuries within the meaning of §9-1-14 and is barred by the two-year statute of limitations set forth in §9-1-14. The plaintiff describes her suit as a contract action which falls within the six-year statute of limitations found in §9-1-13.

Recently, in *Lessard* v. *New Hampshire Ins. Co.,* 106 R. I. 275, 258 A.2d 793, we were confronted with but did not resolve the identical question presented in this phase of defendant's appeal. There we decided that, since the insured's suit against the uninsured tort-feasor was still pending, the insurer's right of subrogation had been preserved. We saw no reason, therefore, for denying the insured the right to sue his insurance company for benefits under his uninsured motorists coverage. In the case at bar, however, the suit against the cab owner and its driver has been dismissed. We must now decide whether an insured, injured by the alleged negligence of an uninsured motorist and who has not commenced a civil action against his own insurer within the two-year period of limitations described in §9-1-14, can maintain an action against his insurer provided suit is brought within the six-year period prescribed for civil actions generally.

Section 9-1-14 provides that all actions for "injuries to the person" shall be commenced and sued within two years next after the cause of action shall accrue and not after. In seeking to find the meaning of the phrase "injuries to the person" we need look no further than *Commerce Oil Refining Corp.* v. *Miner,* 98 R. I. 14, 199 A.2d 606, where our present Chief Justice gave a detailed analysis of §9-1-14 and the phrase "injuries to the person." In holding that an action for the abuse of process was within the meaning of "injuries to the person" and thereby subject to the two-year limit of §9-1-14, the Chief Justice set forth an extensive study of the legislative history of the statute and then remarked:

> "It is then our conclusion, that the phrase 'injuries to the person' as used in the instant statute is to be construed comprehensively and as contemplating its application to actions involving injuries that are other than physical. Its purpose is to include within that period of limitation actions brought for injuries resulting

from invasions of rights that inhere in man as a rational being, that is, rights to which one is entitled by reason of being a person in the eyes of the law. *Such rights, of course, are to be distinguished from those which accrue to an individual by reason of some peculiar status or by virtue of an interest created by contract or property.*" (emphasis ours) 98 R. I. at 20-21, 199 A.2d at 610.

It can be seen that in *Commerce Oil Refining Corp.*, the court in expanding the definition of "injuries to the person" within the framework of tortious conduct and claims recognized the difference between a tort action based on "injuries to the person" and action brought because of a right created by contract. Although a tortious injury is an incidental element in the insured's suit against his insurer over a policy contract, the action is fundamentally one in contract. The plaintiff here would have no action if it were not for the coverage provided by her insurance policy. The insurer's liability rises solely from the insurance contract and nothing else. We, therefore, hold that this suit is governed by the six-year rather than the two-year statute.

### III

### The Amount, if any, Due Under the Policy.

In this phase of its appeal, London disclaims any liability for the $10,000 judgment because of certain exclusionary language found in the "Other Insurance" section of its uninsured motorists endorsement. If, however, we refuse to recognize this exclusion, defendant claims that the most it owes its insured is $5,000.

The "Other Insurance" section contains two clauses. One is called an "excess-escape" clause while the other is referred to as a "pro-rata" clause. The "excess-escape" clause provides that if plaintiff is injured while occupying a vehicle not owned by her, the insurance provided in her policy shall apply only as excess insurance over other similar

insurance available to her and then "* * * only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance." The "pro-rata" clause states that where plaintiff has other similar insurance available to her, her "* * * damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance * * *" and her insurer is liable only for its pro-rata share thereof. The insurer's share is then defined as being the ratio between the limits of liability and the total limits of liability of all other available insurance.

Since plaintiff was injured while a passenger in Alice's car, London seeks to eliminate its liability by invoking its "excess-escape" clause. It points to American's $10,000 uninsured motorists coverage and then maintains that its liability to plaintiff has, because of the "excess-escape" language, been reduced to zero. We do not agree.

The efficacy of London's position must be determined by an examination of the scope and purpose of §27-7-2.1. The pertinent language of that statute reads that no automobile liability policy shall be delivered or issued for delivery in this state unless coverage is provided therein or supplemented thereto for the protection of persons insured thereunder "* * * who are legally entitled to recover damages from owners or operators of uninsured motor vehicles * * *." The limits of such coverage are established by a reference to provisions of §31-31-7. Section 27-7-2.1 gives an insured the right to reject the uninsured motorists endorsement.

A survey of cases in which an insured's damages equal or exceed the multiple coverage afforded him by various insurance contracts with uninsured motorists protection shows that there is a difference of opinion as to whether the "Other Insurance" section (be it an "excess-escape"

clause or a "pro-rata" clause) is to be recognized and upheld.

Some jurisdictions have given effect to such clauses[5] and others have declined to give them validity.[6]

Our statute requires the insurance industry to make uninsured motorists coverage available in this state. It speaks of a "policy" and "protection" for those insured thereunder who are legally entitled to collect "damages" from the uninsured. The Legislature fixes a minimum, rather than a maximum, standard of protection. There is no ceiling upon the insured's right of recovery. We think it plain, as did the court in *Patton*, n. 6, that state legislatures were aware, as they enacted uninsured motorists legislation, that the insureds are often injured while in an automobile owned by someone other than them. Had our General Assembly intended to limit the recovery of an injured insured to one policy, even though such a person is covered by more than one policy, the Legislature would have so expressed itself. It is our belief that §27-7-2.1 is intended to protect an insured against his actual loss. Since

---

[5]*Harris* v. *Southern Farm Bureau Cas. Ins. Co.*, 247 Ark. 961, 448 S.W.2d 652; *Maryland Cas. Co.* v. *Howe*, 106 N. H. 422, 213 A.2d 420; *Horr* v. *Detroit Auto. Inter-Ins. Exchange*, 379 Mich. 562, 153 N.W.2d 655; *Russell* v. *Paulson*, 18 Utah 2d 157, 417 P.2d 658; *Miller* v. *Allstate Ins. Co.*, 66 Wash.2d 871, 405 P.2d 712.

[6]*Safeco Ins. Co.* v. *Jones*, 286 Ala. 606, 243 So.2d 736; *Sellers* v. *United States Fidelity & Guaranty Co.* (Fla.) 185 So.2d 689; *State Farm Mutual Ins. Co.* v. *Murphy*, 226 Ga. 710, 177 S.E.2d 257; *Meridian Mutual Ins. Co.* v. *Siddons* (Ky.) 451 S.W.2d 831; *Patton* v. *Safeco Ins. Co.* (Ind. App.) 267 N.E.2d 859; *Johnston* v. *Travelers Indemnity Co.*, Mass.. 269 N.E.2d 700; *Stephens* v. *Allied Mutual Ins. Co.*, 182 Neb. 562, 156 N.W.2d 133; *Moore* v. *Hartford Ins. Co. Group*, 270 N. C. 532, 155 S.E.2d 128; *Curran* v. *State Automobile Mutual Ins. Co.*, 25 Ohio St.2d 33, 266 N.E.2d 566; *Harleysville Mutual Cas. Co.* v. *Blumling*, 429 Pa. 389, 241 A.2d 112; *Vernon* v. *Harleysville Mutual Cas. Co.*, 244 S.C. 152, 135 S.E.2d 841; *Bryant* v. *State Farm Mutual Automobile Ins. Co.*, 205 Va. 897, 140 S.E.2d 817.

the statute explicitly states without any equivocation whatever that each policy issued must supply the required minimum degree of protection, we cannot afford any recognition to the "excess-escape" clause of the subject policy. If we would do otherwise, we would subvert the purpose of the statute. We, therefore, affirm the trial justice's refusal to enforce the "excess-escape" clause of London's policy.

Earlier, in *Aldcroft* v. *Fidelity and Casualty Co.*, 106 R. I. 311, 259 A.2d 408, we refused to recognize a "Limits of Liability" clause which provided for a reduction in the damages payable under the uninsured motorists endorsement by the amount of workmen's compensation or such other similar disability benefits paid the insured. We said in *Aldcroft* that there is nothing in §27-7-2.1 which authorizes the issuance of a policy providing for protection in any lesser amount than that mandated by the statute. What was said in *Aldcroft* applies with equal force in the instant case. In joining those jurisdictions which have, in cases similar to this present appeal, declined to give effect to the "Other Insurance" provisions, we emphasize that our statute allows recovery of the full amount of the coverage so long as the amount of the recovery does not exceed the amount of the insured's actual loss. As the court said in *Harleysville, supra,* 429 Pa. 389 at 395, 241 A.2d 112 at 115, "We do not wish to imply that injured parties may be permitted to pyramid separate coverages so as to recover more than the actual loss."

We believe that there is merit to the insurer's argument that its liability is limited to $5,000.

The minimum limits of uninsured motorists protection are fixed by certain provisions of chap. 31, title 31, already referred to earlier as the Financial Responsibility Act. The Act provides that, except in certain specific instances, any owner or operator of a motor vehicle involved in an accident must render a report concerning the accident to the

Registry of Motor Vehicles. The Registry can require the owner or operator to deposit with it so much security as in the Registry's opinion will satisfy any judgment for damages resulting from the accident. Section 31-31-7 establishes the amount of an automobile liability policy which will exempt a driver from the security deposit requirements of the Act.

In 1964, when plaintiff purchased her uninsured motorists coverage, §31-31-7 called for a $5,000/10,000 liability policy. On May 5, 1964, P. L. 1964, chap. 171, was enacted. This Act doubled the minimum limits of the policy called for by §31-31-7 from $5,000/10,000 to $10,000/20,000. The Act stated that it was to take effect January 1, 1965. The insurer now contends that since its policy was delivered in 1964, it is responsible only for the statutory minimum in effect at that time. We agree.

While the uninsured status of an automobile is to be determined by the policy limits effective on the day of the mishap, the extent of London's liability is established by looking at the date of the delivery of its policy to plaintiff. This is because of the plain direct language of §27-7-2.1. As noted before, the Legislature has declared that no automobile liability insurance policy shall be delivered or issued unless the protection described in §31-31-7 is given the insured. The critical time is the date of the delivery or issuance of London's policy. At the time London delivered its policy to plaintiff, it was bound to provide her with up to $5,000 worth of protection. Accordingly, the trial justice erred when he found London liable in the amount of $10,000.

## IV

### The Insured's Failure to Comply with The Policy's Provisions.

In this final portion of its appeal, the insurer directs our attention to the numerous "notice" and "consent" provisions that are liberally sprinkled throughout the policy. It maintains that the insured's failure to comply with these terms frees it of any obligation to indemnify the insured for her loss. We shall first discuss the "consent" provisions before considering the "notice" requirements.

The defendant has included within its policy an exclusion which makes the uninsured motorists coverage inapplicable when, without its written consent, the insured "makes any settlement with any person or organization who may be legally liable" for the insured's injury. We have no doubt that this proviso is enforceable as it seeks to safeguard the insurer's right of subrogation. Such a clause, however, carries with it an implied promise by the insurer that its consent will not be arbitrarily or unreasonably withheld. *Levy* v. *American Auto. Ins. Co.*, 31 Ill. App.2d 157, 175 N.E.2d 607. In seeking to determine how London's conduct should be classified, let us review the record of plaintiff's negligence suit and her insurer's reaction thereto.

An examination of the pleadings on this file shows that plaintiff alleged that the only persons who were negligent were the cab's driver and its owner. While Alice was a party defendant to the suit against the taxi owner and its driver, plaintiff at no time ever contended that her friend was a negligent driver. It is quite clear that at all times plaintiff was pressing for a speedy trial. On April 11, 1967, she made a motion that her case be assigned to the jury trial calendar for September 21, 1967. Counsel for the

cab's insurer had filed a motion asking that the case be assigned to January 8, 1969—almost two years later. The plaintiff objected to this motion and on April 21, 1967, an order was entered denying each of the litigants' motions and directing that the case be assigned to the February 15, 1968 jury trial calendar. The plaintiff's replies to the interrogatories asked of her by Liberty Mutual were filed with reasonable dispatch. They were lengthy and gave in complete detail a thoroughly itemized account of plaintiff's claim. The cab driver's answer to plaintiff's interrogatories was not filed until after she had filed a motion that the driver be compelled to furnish his answers.

When the insured's attorney in December, 1967 sent defendant notice of her claim under the uninsured motorists endorsement of her policy, the negligence action had been in an assigned status on the jury trial calendar for over eight months. The insurer received this notice but did nothing. After the lapse of another month, a second notice was sent to London informing it of the trial date, and inviting the insurer to participate in the forthcoming trial, so that the best possible verdict could be obtained. Finally, on February 9, 1968, just six days before the jury trial day, the insurer, through its counsel, sent a letter to the insured's attorney wherein the receipt of his two earlier letters was acknowledged.

While the insurer's communication was described as a reservation of rights, it went on to say that there had been "manifest disregard" of the terms and conditions of the policy; that the insured's attorney was in error as to the facts and the law; and that "in any event, coverage neither exists nor applies in manner and form as you have alleged." The letter then concluded by specifically withholding the insurer's consent to either the acceptance of the settlement offer made by Liberty Mutual or to the prosecution of judgment of the negligence action. Even though it has

been said that "a rose is a rose," the so-called "reservation-of-rights" letter amounted to nothing more than an outright eleventh-hour denial of liability. It would have been ludicrous and a true exercise in futility for plaintiff to sit back and await the defendant's written consent after her counsel had been told that there was no coverage. The negligence action had been ready for trial and on the calendar for many months when the insurer finally decided to do something about plaintiff's claim. It ignored the December 1967 message and it cannot be said that it proceeded with any expeditious dispatch when it received the January 1968 notice. It made no effort to initiate any investigation of the claim. Rather, its sole response was a letter which in substance proclaimed no liability under its policy but, whatever you do, do not proceed any further with the pending suit. This attitude, in the circumstances of this case, can only be described as capricious and arbitrary. It would be unjust in this day of crowded and clogged court calendars to permit defendant insurer, who has been anything but diligent, to prevent the disposition of a case assigned as ready to go to trial on February 15, 1968, by employing on February 9, 1968, the simple device of refusing to permit its insured to do anything with her suit against the uninsured cab. We, therefore, hold that the insurer's conduct relieved plaintiff from complying with the provisions requiring London's consent before the claim could be settled. *See Allstate Ins. Co. v. Pietrosh,* 85 Nev. 310, 454 P.2d 106; *Vanguard Ins. Co. v. Polchlopek,* 18 N.Y.2d 376, 222 N.E.2d 383.

The several notice provisions found in the policy concern such matters as the giving to the insurer notice of a loss, the furnishing the insurer with copies of legal process served in the uninsured motorist's suit and the filing of a sworn written proof of claim. The policy declares that the giving of notice of the loss and the filing of the proof

of claim shall be done "as soon as practicable" while the copies of suit papers are to be forwarded "immediately" to the insurer.

The insurer insists that the almost two and one-half years' lapse between the commencement of plaintiff's negligence action and her December 1967 notice does not amount to a notice which was offered "as soon as practicable." It also points out that it was never supplied with a proof of loss or a copy of the summons and complaint filed in the taxicab suit.

Although the insurer's subtraction is correct, it overlooks one factor. It is uncontradicted that the insured and her attorney had no inkling of the cab's uninsured status until "sometime" after July 31, 1967—the day the cab driver's replies to plaintiff's interrogatories were filed in the Superior Court. We have used the word "sometime" because it is impossible to tell from the negligence file the exact time when a copy of the driver's replies was sent to plaintiff's attorney. We shall, however, assume that plaintiff's attorney did receive a copy of the replies in early August 1967.[7] It is conceded that, a little over four months later, on December 22, 1967, London's agent was notified that plaintiff's negligence action was pending; that a settlement offer consisting of the full amount of the cab's policy had been tendered and that the amount of the insured's damages was estimated to be between $25,000 and $30,000.

A requirement in an insurance policy that notice be given to the insurer "as soon as practicable" or "immediately" does not mean instantaneous notice. Rather, the condition is satisfied if the insured acts diligently and with all reasonable dispatch, having in mind all the circumstances and facts of a particular case. *Cinq-Mars* v. *Travelers Ins. Co.*,

---

[7] Rule 5(d) of Super. R. Civ. P. states that the filing of a paper by an attorney in the clerk's office constitutes a representation by the attorney that a copy thereof has been or will be served upon the other parties.

100 R. I. 603, 218 A.2d 467. In determining whether notice was given within a reasonable time, the following circumstances, among others, have been considered to be relevant: the length of delay in giving the notice, the reasons for the delay and the probable effect of the delay on the insurer. 8 Appleman, *Insurance Law and Practice* §4734 at 29. Consideration of the effect of the delayed notice involves the extent, if any, of prejudice suffered by an insurer because it was not notified of a loss or claim within the reasonable time. Any evaluation of the effect of the four-month hiatus between August and December 1967 necessitates a reassessment of a holding made in 1917, when this court in *Sherwood Ice Co.* v. *U. S. Cas. Co.*, 40 R. I. 268, 100 A. 572, ruled that it was wholly immaterial that an insurer was not prejudiced by its insured's neglect to give the requisite notice called for in the policy. There is, of course, a difference of opinion as to whether an insured's lack of prejudice is a material element to be considered when determining if proper notice was given by an insured. 8 Appleman, *Insurance Law and Practice* §4732 at 15-19; 13 Couch, *Insurance* 2d §49:127 at 715; Anno. 18 A.L.R.2d 443, 479. The court in *Sherwood Ice Co., supra,* looked upon the insurance policy as a contract where the parties were free to include or exclude any legal conditions they thought necessary and proper. The parties having made their agreement, the court took the view that it would do nothing to modify the terms contained therein. Today, we no longer look at an insurance policy in that light. An insurance contract is not the end result of the give-and-take that goes on at a bargaining table. In *Cooper* v. *Government Employees Ins. Co.*, 51 N. J. 86, 237 A.2d 870, it was recognized that an insur-

ance policy is not a true consensual arrangement[8] but one that is available to the premium-paying customer on a take-it-or-leave-it basis. This being the case, the New Jersey Supreme Court observed that it is most appropriate that a carrier not be permitted to declare a forfeiture of the bargain-for protection unless .there has been a breach of the notice provisions and the likelihood that the carrier has been prejudiced thereby. The carrier has the burden of showing such prejudice. Somewhat similar sentiments have been expressed in *Sutton Mutual Ins. Co.* v. *Notre Dame Arena, Inc.*, 108 N. H. 437, 237 A.2d 676; *Members Mutual Ins. Co.* v. *Cutaia*, Tex. Civ. App., 460 S.W.2d 493.

We find the reasoning in *Cooper, supra,* to be most persuasive. We do not believe that a technical breach of the notice provisions in a policy should bar an insured from recovering the benefits for which he has paid. We include within the term "notice" such items as the furnishing of a proof of claim and a copy of the summons and complaint. Since we have seen fit to overrule that part of *Sherwood Ice Co., supra,* which speaks about the lack of prejudice, we deem it proper to remand this case to the Superior Court where the insurer may, if it wishes, seek to show how and in what manner the four-month delay in the giving of notice and/or the lack of the proof of claim and the suit papers have worked to its prejudice. Any findings made by the trial justice as to prejudice are subject to appeal to this court.

The defendant's appeal only insofar as it relates to the notice provisions of its policy and the $10,000 judgment

---

[8]The policy before us is usually described as a contract of adhesion. This is a phrase descriptive of a standard form printed contract prepared by one party and submitted to another on a take-it-or-leave-it basis. Usually, there is no true equality of bargaining power between the parties. *See* Kessler, *Contracts of Adhesion,* 43 Colum. L. Rev. 629.

is sustained and in all other respects it is denied. The judgment appealed from is vacated and the case is remanded to the Superior Court for further proceedings in accordance with this opinion.

## APPENDIX

"27-7-2.1. Uninsured motorist coverage.—No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in §31-31-7 as amended, under provisions approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom, provided that the named insured shall have the right to reject such coverage.

"Such coverage shall also apply in the case of a responsible party whose liability insurance carrier was insolvent at the time of the accident or became insolvent subsequent thereto."

*Louis M. Macktaz, Peter Y. Macktaz,* for plaintiff.

*Gunning, LaFazia, Gnys & Selya, Richard T. Linn,* for London Guarantee & Accident Co., Ltd., defendant.