William B. COOLEY

v.

JOHN M. ANDERSON COMPANY

v.

TRAVELERS INDEMNITY COMPANY.

No. 79–423–Appeal.

Supreme Court of Rhode Island.

April 1, 1982.

 summary judgment, if appropriate, shall be  entered against him."

Higgins, Cavanagh & Cooney, Kenneth P. Borden, John C. Peterson, Providence, for appellant, John M. Anderson Co.

Rice, Dolan, Kiernan & Kershaw, John W. Kershaw, Providence, for appellee The Travelers Indem. Co.

## OPINION

KELLEHER, Justice.

According to the Superior Court justice whose decision is presently before us for review, this controversy "boils down to a fight between two insurance companies to see who has to pay out the most money." The insurers are the London & Lancashire Insurance Company, Limited (London), and the Travelers Indemnity Company (Travelers). As will be seen, the route by which London and Travelers, ready to do battle with each other, found their respective ways to the trial justice might be said to be somewhat circuitous.

This litigation had its genesis on May 15, 1968, when William B. Cooley (Cooley), a driver employed by Elliott Brothers Trucking Company (Elliott), arrived in Cranston at the Budlong Road headquarters of the John M. Anderson Company (Anderson) with a truckload of airconditioning units. Each unit weighed approximately 12,000 pounds. Anderson, which operates a trucking and rigging business, was to unload the units from Elliott's vehicle onto one of its trucks for eventual delivery to the rooftop of a Warwick supermarket. When Cooley arrived at Budlong Road, all Anderson's loading bays were occupied. Consequently, it was agreed that the units would be transferred on the street.

Cooley parked his vehicle along the curb in front of Anderson's office building. One of Anderson's trucks, which was equipped with a capstan, pulled up alongside Elliott's truck. Each of the airconditioning units contained two lifting holes. Anderson's chief executive secured an eye bolt in each

hole. (An eye bolt is a threaded bolt with a looped head.) Once the bolt was secured by the addition of the requisite washer and nut, a rope, which was wrapped around the capstan, was attached to each loop, and Anderson's employees were then ready to "snake" the units from one truck to the other. Cooley was standing by, watching the goings on. As the capstan turned, tension was applied to the rope. As the tension increased, one of the eye bolts suddenly pulled through the hole and, in the words of Anderson's chief executive, "whipped across and struck Mr. Cooley on the ankles."

Later, on March 23, 1970, Cooley instituted a negligence action against Anderson in which he sought $25,000. Sometime in early 1971 Anderson filed a third-party complaint against Cooley's employer, Elliott, seeking a contribution from Elliott as an alleged joint tort-feasor. Subsequently, Anderson amended its third-party complaint by omitting any demand from Elliott for contribution, adding Travelers as a third-party defendant, and claiming that it, Anderson, was an additional insured under the loading and unloading proviso found in a Comprehensive Automobile Liability Policy issued to Elliott by Travelers. In January 1972 Travelers filed an answer in which it challenged Anderson's status as an insured and classified Cooley as a recipient of workers' compensation benefits. Subsequently, in May 1972, Cooley's claim against Anderson was settled for $5,000, and a stipulation was entered dismissing his claim. When Anderson and Travelers appeared before the trial justice in February 1974, all parties agreed that the $5,000 payment was a fair and reasonable settlement.

Travelers offered a two-pronged defense to Anderson's claim. It argued that Anderson was not an additional insured under the terms of its policy and that even if Anderson were an insured, it forfeited any rights under the policy by its failure to comply with the policy's notice provisions. The trial justice ruled that although Anderson did qualify as an additional insured, it could not recover because of its failure to comply with the requirements of Traveler's policy relating to the giving of notice.

In rejecting Anderson's claim, the trial justice made it clear that he would not apply the rule set forth in *Pickering v. American Employers Insurance Co.*, 109 R.I. 143, 282 A.2d 584 (1971), which requires a showing of prejudice by an insurer before it can take advantage of one's failure to give the requisite notice. The trial justice gave a threefold rationale for his action: (1) *Pickering* involved a named insured against an insurer whereas the trial justice was presiding over a conflict between two insurers, (2) the delay in *Pickering* was four months whereas the delay period in the case at bar amounted to three years, and (3) there were other factors besides prejudice, such as the reasons for the delay. It is our belief that the trial justice erred when he absolved Travelers of any necessity to prove that the lapse between the eye-bolt incident and its involvement with Anderson's claim had worked to its prejudice.

Approximately two years ago in *Siravo v. Great American Insurance Co.*, R.I., 410 A.2d 116 (1980), three of the five present members of this court, in responding to a certified question posed by the United States Court of Appeals for the First Circuit pursuant to our Rule 6, reiterated their support for the *Pickering* rationale when they advised their federal brethren that a late filing of a sworn proof of loss would not bar recovery for an insured in the absence of proof by the insurer of prejudice arising from the insured's tardiness.

■ So that there can be no misunderstanding, we announce that the rule of *Pickering* is alive and well in this jurisdiction and is especially applicable to the case at bar in which recovery is sought as an additional insured from an insurer who, for an additional premium, has issued a comprehensive policy that offers protection to any person using the insured vehicle and also stipulates that the use of the vehicle includes the loading and unloading thereof. In *Cinq-Mars v. Travelers Insurance Co.*, 100 R.I. 603, 611, 218 A.2d 467, 472 (1966), the court emphasized that when coverage includes the loading and unloading proviso, oftentimes an insured is completely unaware of the coverage that is present for his or her benefit.

■ The record indicates that Travelers was also Elliott's workers' compensation carrier. Thus, it would appear that Travelers, because of its dual role, may have had actual knowledge of Cooley's May 1968 mishap. This court has held that notice to an insurer in its capacity as a compensation carrier is sufficient notice to the insurer when acting as the liability carrier. *Sinclair Oil Corp. v. New Hampshire Insurance Co.*, 107 R.I. 469, 477, 268 A.2d 281, 285 (1970). However, the crucial question when, as here, Travelers resists payment because of Anderson's failure to comply with the policy's notice requirements is a showing of prejudice by the insurer.

When the record is examined in its entirety, there is a conspicuous absence of any showing that Travelers has been prejudiced by Anderson's belated discovery of coverage. There is no indication whatsoever what Travelers would have done even if Anderson's claim had been filed much earlier. In fact, Travelers concedes that the settlement effectuated by London was fair and reasonable. Since the requisite prejudice has not been proved, Anderson's primary insurer, London, is entitled to receive from Travelers a proportionate share[1] of the $5,000 paid to Cooley.

---

1. Anderson claims that Travelers' contributive share is $4,500. In doing so, Anderson points to the "Other Insurance" clause in Travelers' policy whereby Travelers agrees *that if there is* another insurance policy covering the same loss, Travelers would not be liable for a greater portion of the loss than the total limit of liability of its policy bears to the total liability of all the insurance covering a particular loss. London's other-insurance provision stipulates that its policy shall be considered as "Excess Insurance" over any other collectible insurance available to the insured. Travelers' policy has a "$1,000,000 Single Limit," whereas London's policy has a $100,000 limit for each person. London, in calculating the pro rata share of loss, comes up with a ratio where London pays 10 per cent of the loss or $500 and Travelers is responsible for 90 per cent of the loss or $4,500. Our mathematics indicates a different apportionment of $\frac{1}{11}$ to London and $\frac{10}{11}$ to

Two final comments: Unlike the trial justice, we view Anderson's claim against Travelers as Anderson's rather than London's. We prefer to look at the competing interests as being the insured's, Anderson's, vis-à-vis the insurer's, Travelers'. Having in mind our past experience with loading and unloading litigation, there is every possibility that in the not-too-distant future the shoe will be on the other foot with Travelers claiming that its insured qualifies as an additional insured under an automobile comprehensive liability policy issued by, of all firms, London.

Before us Travelers has placed great reliance upon our holding in *Stanko v. Hartford Accident & Indemnity Co.*, R.I., 397 A.2d 1325 (1979), where we rejected the plaintiff's attempt to recover under two automobile liability policies, each of which afforded protection against the uninsured motorist. The difference between *Stanko* and *Anderson* is obvious. The prejudice to Barbara Stanko's insurer was clear. Prior to instituting her suit against the insurer, Barbara had settled her claim against the uninsured and in the process had given the uninsured a general release. In giving the release without the consent of her insurer, Barbara not only breached the terms of the policy but in the process completely demolished the insurer's right of subrogation. No such catastrophe has befallen Travelers in the pending controversy.

Accordingly, Anderson's appeal is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court for further proceedings in accordance with this opinion.

Travelers. However, the mathematical difference will be resolved after remand.