**Andrew CONSTANT et al.**

**v.**

**AMICA MUTUAL INSURANCE CO.**

**No. 82-558-A.**

Supreme Court of Rhode Island.

Aug. 26, 1985.

John B. Reilly, Reilly & Flaherty, Warwick, for plaintiff.

James T. Murphy/A. Lauristan Parks, Hanson, Curran & Parks, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal by Amica Mutual Insurance Company (Amica) from a partial summary judgment entered by a justice of the Superior Court on the issue of intra-policy "stacking." Partial summary judgment was entered pursuant to an action for declaratory judgment filed by Andrew and Mary Constant in order to determine the extent of uninsured-motorist coverage afforded them by a policy of insurance issued by Amica. We reverse and remand for further proceedings. The facts of the case are as follows.

On September 11, 1981, plaintiffs, while vacationing on Block Island, were operating uninsured rented mopeds. While operating these mopeds, Andrew Constant was struck by a hit-and-run vehicle and Mary Constant was forced off the highway by the same vehicle. As a result of this accident, both plaintiffs suffered personal injuries. Andrew Constant's injuries were extremely serious and included a broken neck. At the time of this incident, plaintiffs owned two motor vehicles that were covered by an automobile insurance policy issued by Amica. The declarations page of this policy listed the two vehicles, a 1977 Buick station wagon and a 1978 Buick Skylark coupe. In addition to liability coverage, the declaration sheet listed uninsured-motorist coverage for each vehicle in the amount of $50,000 for each accident. The premium for auto No. 1 for the uninsured-motorist coverage was stated as $12. The premium for auto No. 2 for the same coverage was stated as $10.

The policy also contained the following provision:

## "LIMIT OF LIABILITY

"The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay *regardless of the number of* covered persons, claims made, *vehicles or premiums shown in the Declarations,* or vehicles involved in the accident." (Emphasis added.)

After considering the motion for partial summary judgment, the trial justice, relying on our decision in *Taft v. Cerwonka,* — R.I. —, 433 A.2d 215 (1981), entered partial judgment "declaring that the policies in this case should be stacked for the purpose of recovery under the uninsured motorist provision." The effect of this decision is that the maximum coverage of $50,000 for each accident would be doubled to $100,000 in total.

The sole issue raised by this appeal is whether, in light of the limit of liability set forth in the policy, intra-policy stacking is authorized as a matter of law.

The history of the development of the various lines of authority in respect to inter-policy stacking and intra-policy stacking is set forth in great detail in *Taft, supra,* and need not be repeated here. Suffice it to say that this court recognized inter-policy stacking in *Pickering v. American Employers Insurance Co.,* 109 R.I. 143, 282 A.2d 584 (1971). We confronted the issue of intra-policy stacking in *Taft* under the following circumstances. Allstate Insurance Company had issued an automobile policy to the plaintiffs, who brought an action to recover for the wrongful death of their daughter arising out of the negligence of an uninsured motorist. In that case the limits-of-liability clause was less specific than the clause contained in Amica's policy. In addition, the policy contained a clause in respect to insurance on two or more automobiles, the wording of which created an ambiguity in respect to coverage.[1] It is true that this court in *Taft*

---

1. The Allstate policy contained the following language:

"6. *Limits of Liability*

"(a) The limit of liability stated in the declarations as applicable to 'each person' is the limit of Allstate's liability for all damages, including damages for care or loss of services, be-

purported to rely not upon an ambiguity in the Allstate policy but upon a separate-premium theory. However, we did observe that we would be "careful to limit our holding on this issue to cases factually similar to the one at bar * * *." *Taft,* — R.I. at —, 433 A.2d at 219. In our opinion in *Taft* we were persuaded to a significant degree by a dissenting opinion by Justice Douglas of the Supreme Court of New Hampshire in *Grimes v. Concord General Mutual Insurance Co.,* 120 N.H. 718, 422 A.2d 1312 (1980). Justice Douglas, in his dissenting opinion, emphasized the "reasonable expectation" of the policyholder based upon an ambiguity in the policy under consideration. Consequently, although he advocated the separate-premium approach, he implicitly relied upon a reasonable expectation bottomed upon an ambiguity. Our opinion in *Taft* cannot be considered without including the implicit ambiguity contained in the Allstate policy.

■ In the case at bar, the limitation of liability set forth in the Amica policy is completely free of ambiguity and conveys most clearly that the limit of liability set forth in the declarations, namely $50,000, is the maximum limit regardless of the "number of * * * vehicles or premiums shown in the Declarations * * *." In our opinion this language would preclude any reasonable expectation on the part of the policyholder that he or she would be entitled to intra-policy stacking. The present controversy demonstrates the wisdom of our holding in *Taft* that it should be limited to cases factually similar to the one at bar. We have recently held that in the absence of a statutorily declared policy to the contra, the parties to an insurance agreement are free to contract as they desire. *Faraj*

v. *Allstate Insurance Co.,* — R.I. —, —, 486 A.2d 582, 586 (1984) (citing *American Family Mutual Insurance Co. v. Ryan,* 330 N.W.2d 113, 115 (Minn.1983)).

■ Our statutorily declared policy applicable to this case is found in G.L.1956 (1979 Reenactment) § 27–7–2.1, as amended by P.L.1981, ch. 251, § 2, which provided in pertinent part as follows:

"No policy insuring against loss resulting from liability imposed by law for property damage caused by collision, bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for property damage caused by collision, bodily injury or death *set forth in § 31–31–7 as amended,* under provisions approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and *hit-and-run motor vehicles because of property damage, bodily injury, sickness or disease,* including death, resulting therefrom, provided that the named insured shall have the right to reject such coverage, or that portion thereof that applies to property damage." (Emphasis added.)

The provisions of G.L.1956 (1982 Reenactment) § 31–31–7, then as now, provided for minimum coverage of $25,000 because of bodily injury to one person and a minimum of $50,000 because of bodily injury to

---

cause of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of Allstate's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident.

\*     \*     \*     \*     \*     \*

"3. *Insurance on Two or More Automobiles*
"When two or more automobiles are insured by this policy, the terms of this policy shall apply separately to each, but an automobile and attached trailer shall be deemed to be one automobile as respects the limits of liability under Section I and separate automobiles under Section III including any deductible provisions which may apply."

two or more persons in any one accident. No one disputes that the limits set forth in the uninsured-motorist provisions of Amica's policy met the requirements of this section. Consequently, the limitation of liability contained in the Amica policy restricting the maximum limit to $50,000 does not violate the uninsured-motorist statutory provision.

Thus, in light of the unambiguous limitation of liability, no reasonable expectation on the part of the plaintiffs is violated and no statutory policy is transgressed by giving effect to the terms of the contract between the parties. For this reason it was error for the trial justice to stack the liability in this policy by doubling the amount limited both in the declarations and by virtue of the policy language itself.

For the reasons given, the appeal of Amica is sustained. The judgment of the Superior Court is reversed, and the papers in the case are remanded for the entry of judgment consistent with this opinion.

BEVILACQUA, Chief Justice, dissenting.

I respectfully disagree with the majority. I believe its action undermines our decision in *Taft v. Cerwonka*, —— R.I. ——, 433 A.2d 215 (1981), and subverts the public policy of this state.

Automobile-insurance contracts are not typical arms' length agreements. They are invariably reduced to standardized forms that are uniform across the state and afford the purchaser little or no opportunity to negotiate more favorable terms. The assertions of the majority notwithstanding, standard automobile-insurance contracts do not advance "[t]he policies underlying the principle of private autonomy." Dugan, *The Application of Substantive Unconscionability to Standardized Contracts—A Systematic Approach*, 18 N.E.L. Rev. 77, 78–79 (1982). Therefore, exclusionary language must fail if it is contrary to the legislative policy or statutory intent of G.L.1956 (1979 Reenactment) § 27–7–2.1, as amended by P.L.1981, ch. 251, § 2.

We have consistently voided contract clauses in uninsured-motorist policies on the ground that their provisions conflict with the public policy mandated by the Legislature. *Poulos v. Aetna Casualty and Surety Co. of New York*, 119 R.I. 409, 379 A.2d 362 (1977); *Pickering v. American Employers Insurance Co.*, 109 R.I. 143, 282 A.2d 584 (1971); *Aldcroft v. Fidelity and Casualty Co. of New York*, 106 R.I. 311, 259 A.2d 408 (1969).

In view of this court's reluctance to recognize clauses that seek to limit an insured's recovery under the uninsured-motorist provision of a policy, a limitation within such a policy must be scrutinized to ensure that it does not contravene this state's policy, first enunciated in *Aldcroft v. Fidelity and Casualty Co. of New York*, 106 R.I. at 318, 259 A.2d at 413, of protecting an insured against loss arising from a collision with an uninsured motorist.

At the outset it is important to distinguish liability insurance from uninsured-motorist coverage. Liability insurance is restricted by statute to situations "arising out of the ownership, maintenance or use of [the insured motor] vehicle * * *." General Laws 1956 (1982 Reenactment) § 31–32–24(b)(2). Uninsured-motorist coverage does not limit recovery to situations involving the motor vehicle of the insured. Rather, it extends coverage to insured persons wherever they may be, provided that they are injured by an uninsured motorist.

Statutory construction requires us to ascertain the intent behind its enactment and to effectuate that intent whenever it is lawful and falls within the competence of the Legislature. *Dunne Leases Cars & Trucks, Inc. v. Kenworth Truck Co.*, —— R.I. ——, ——, 466 A.2d 1153, 1156 (1983). Simply stated, § 27–7–2.1 provides that no insurance policy may issue without uninsured-motorist coverage; however, this coverage may be rejected by the insured in writing. The minimum dollar amount of such coverage is set forth in § 31–31–7. The predicate to recovery under one's unin-

sured-motorist coverage is that the tort-feasor be uninsured and that the insured have a right of recovery from the tort-feasor. There is clearly no provision permitting the type of exclusionary clause that defendant has written into the policy.

Far from embodying the parties' arm's-length negotiations, this clause was injected into the contract by the policy writers to negate the "stacking" of uninsured-motorist coverage that this court approved in *Taft*. In *Taft v. Cerwonka*, we held that "where plaintiffs have paid two separate premiums providing each vehicle with uninsured-motorist coverage, they are entitled to recover under the uninsured-motorist provisions of the policy sums found legally recoverable up to the aggregate sum of the motor vehicle so insured." — R.I. at —, 433 A.2d at 219.

The majority, with only a cursory reference to the "double premium" holding in *Taft*, states that "[o]ur decision in *Taft* cannot be considered without including the implied ambiguity contained in the Allstate policy." A careful reading of *Taft* reveals that the holding was restricted "to cases factually similar to the one at bar," — R.I. —, 433 A.2d at 219, not because of ambiguity in the insurance-policy language, but rather because the court was unwilling at that time to extend the logic of stacking two premium payments to stacking of an automobile-fleet policy.[1]

Unlike *Taft* the policy in the instant case contained a clause that expressly restricted stacking of uninsured-motorist coverage. The meaning of this policy language is uncontested, however; it subverts the legislative intent underpinning the uninsured-motorist statute. In *Aldcroft* we stated that the Legislature with this statute has

adopted a conscious policy that seeks to protect insured motorists from uninsured motorists. In *Taft* we permitted a nonfleet policyholder to stack the coverage of two uninsured-motorist policies. It therefore violates public policy and certainly fails to comport with the Legislature's intent to allow an insurer to collect a premium for certain protection and then take it away by a limiting clause.

There can be no doubt that had the insureds secured this exact policy from two different insurers, the exclusionary clause would not have applied and recovery under each would be afforded. But in situations in which the insureds opt for the convenience of placing both policies with the same insurer, recovery under only one policy is permitted.[2]

The Massachusetts Supreme Court has examined this precise issue in a recent decision. *Cardin v. Royal Insurance Co. of America*, 394 Mass. 450, 476 N.E.2d 200 (1985). Confronted with an unambiguous exclusionary clause that forbade stacking of uninsured-motorist coverage unless the premium was listed on the policy cover sheet, the court held that such a clause was contrary to the policy of the uninsured-motorist statute and therefore void. *Id.* at 457, 476 N.E.2d 200.

An examination of the language of our uninsured-motorist statute, § 27–7–2.1, reveals no limitation on intrapolicy stacking. Moreover, the unambiguous intent of this section is to protect an insured against loss arising from an accident with an underinsured motorist. *Bibeault v. Hanover Insurance Co.*, — R.I. —, 417 A.2d 313 (1980). The Legislature has established a minimum-coverage threshold in § 31–31–7

---

1. The court feared that without limiting *Taft v. Cerwonka*, — R.I. —, 433 A.2d 215 (1981), to its facts, a plaintiff would seek to apply *Taft* to the stacking of a fleet policy. This issue was addressed in *American Universal Insurance Co. v. Russell*, — R.I. —, 490 A.2d 60 (1985). The court held that because no uninsured motorist premiums had been paid on the thirty-three vehicle fleet policy, the statutory minimum coverage arose by operation of law, entitling the injured party to recovery but denying her attempt to stack the fleet policy.

2. The conclusion that Rhode Island consumers with two or more automobiles in their households should draw from the majority opinion is that each automobile must be insured with a different insurer to defeat this type of exclusionary language and to receive the full benefit of each uninsured-motorist premium.

for uninsured-motorist insurance, but it has erected no ceiling upon the insured's right of recovery. *Id.* at ——, 417 A.2d at 317.

The majority opinion effects an evisceration of the uninsured-motorist statute by permitting an insurer to interject a coverage-exclusion clause without statutory authority. The evisceration is particularly apparent in this instance. A fair reading of *Taft* clearly permits stacking when two premiums have been paid. I would follow our holding in *Taft* and the Massachusetts Supreme Court's holding in *Cardin* and void the exclusionary clause, thereby permitting intrapolicy stacking of uninsured-motorist coverage.

Justice Kelleher, dissenting. I share the sentiments expressed by the Chief Justice. This court has consistently ruled that G.L. 1956 (1979 Reenactment) § 27–7–2.1, as amended by P.L.1981, ch. 251, § 2, requires an insurer selling automobile liability insurance to offer a policy that would provide "protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." Recently, in *Malo v. Aetna Casualty and Surety Co.,* —— R.I. ——, ——, 459 A.2d 954, 956–57 (1983), the Chief Justice, in writing for a unanimous court, emphasized:

> "Neither the terms of the statute nor the public policy expressed therein mandates what class of persons must be extended coverage, nor do they disallow any restriction on that class. Rather, the designation of what persons are insured for purposes of this statute is left to the terms of the particular insurance policy."

Here, there is no question that the insured and his spouse were covered persons for the purposes of that portion of the policy that afforded "UNINSURED MOTORISTS COVERAGE." Through the years, whenever § 27–7–2.1 has been in issue, it has consistently been construed so as to provide to an insured optimum coverage up to the amount of the aggregate amount of available insurance as long as the amount of the recovery does not exceed the actual loss suffered by the insured. *Taft v. Cerwonka,* —— R.I. ——, ——, 433 A.2d 215, 219 (1981) (authorizing intrapolicy stacking); *Pickering v. American Employers Insurance Co.,* 109 R.I. 143, 152–53, 282 A.2d 584, 590 (1971) (authorizing interpolicy stacking). In *Gleason v. Merchants Mutual Insurance Co.,* 589 F.Supp. 1474, 1483 (D.R.I.1984), Judge Bruce M. Selya pointed out that the broad benefits available by virtue of § 27–7–2.1 are "tucked snugly about the purchaser of a policy of motor vehicle insurance issued in Rhode Island, [and] the insurer retains considerable say in determining which other persons can slip beneath the coverlet."

Here, Amica has extended the "coverlet" to both the insured and his wife as a "family member," and as such they are entitled to seek from Amica reimbursement for their actual losses up to the amount of $100,000. Such a conclusion is in keeping with our prior holdings that insureds are entitled to obtain the uninsured-motorist coverage for which they paid premiums up to the amount of their actual loss, whether the individual premiums are assessed through two separate policies or through one. This principle, in my opinion, is inscribed by operation of statute in every insurance contract containing uninsured-motorist coverage in this state and cannot be controverted by clauses attempting to take away with one hand what has been given, at the behest of the Legislature, by the other. I see no reason why *Taft* should not be applicable to the facts of this case or why this court should not reach the same conclusion as did the Massachusetts Supreme Judicial Court in *Cardin v. Royal Insurance Company of America,* 394 Mass. 450, 476 N.E.2d 200 (1985).

Accordingly, I would dismiss Amica's appeal and sustain the trial justice's allowance of intrapolicy stacking.