**Mario FRAIOLI**

v.

**METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY et al.**

**No. 99–60–Appeal.**

Supreme Court of Rhode Island.

April 6, 2000.

Charles E. Casale, Cranston, Stephen C. Mackie, Providence, for plaintiff.

L. Lee Boatright, for defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court for oral argument on March 7, 2000, pursuant to an order that directed both parties to appear in order to show cause why the issues raised by this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and, therefore, we proceed to decide the issues at this time.

The plaintiff, Mario Fraioli (plaintiff), has appealed from a Superior Court judgment entered in favor of defendant, Amica Mutual Insurance Company (Amica). The facts in this case are undisputed.

The plaintiff was involved in a motor vehicle accident on May 11, 1994, with another vehicle operated by Stephen Hay (Hay or tort-feasor). The plaintiff had a passenger, Vincent DiPippo (DiPippo), in his vehicle. Both plaintiff and his passenger were injured. At the time of the accident, plaintiff was insured for both liability and uninsured/underinsured motorist coverage under a policy issued by Amica. DiPippo was insured by Prudential Insurance Company (Prudential). Both plaintiff and DiPippo were represented by the same attorney, Charles Casale (Casale).

The other vehicle involved in the collision was owned by Hay, and was insured by Metropolitan Property and Casualty Insurance Company (Metropolitan). The policy limits on Hay's insurance were $25,000/$50,000.

In 1995, Casale obtained permission from Prudential to settle DiPippo's claim with the tort-feasor for the policy limit of $25,000. This letter was mistakenly placed in plaintiff's file.

Beginning in January 1995 and continuing until May 1995, Casale made numerous requests, both written and oral, to Amica seeking permission to settle plaintiff's claim with Hay's insurance carrier for the policy limit applicable to a single person. During this period Metropolitan had not made an offer to settle for the policy limits. However, it was conceded at oral argument that Amica, on the basis of Casale's requests, had caused an asset check to be made in respect to the tort-feasor. This asset check revealed that Hay had no appreciable assets.

In May 1995, Casale, believing that Amica had given permission to settle with the tort-feasor, agreed on plaintiff's behalf to settle with Metropolitan for the $25,000 policy limit. When he discovered his error, Casale again asked Amica for permission to settle but was refused. Thereafter, plaintiff filed an action in Superior Court seeking a declaratory judgment that Amica had wrongfully and in bad faith withheld consent. After an evidentiary hearing, the trial justice entered judgment in favor of Amica on the ground that it had not consented to plaintiff's settlement with the tort-feasor for the policy limits.

■ The statute relating to the preservation of rights against a claimant's underinsured motorists carrier is G.L.1956 § 27–7–2.1(h), which reads in pertinent part as follows:

"In the event that the person entitled to recover against an underinsured motorist recovers from the insurer providing

coverage pursuant to this section, that insurer shall be entitled to subrogation rights against the underinsured motorist and his or her insurance carrier. Release of the tortfeasor with the consent of the company providing the underinsured coverage shall not extinguish or bar the claim of the insured against the underinsurance carrier regardless of whether the claim has been liquidated."

We have held that this statute read together with a consent exclusion in the insurance policy requires that a plaintiff obtain the consent of his or her underinsured insurance carrier before settling with the tort-feasor, and that failure to do so will render the uninsured motorist's coverage inapplicable. *See Pickering v. American Employers Insurance Co.,* 109 R.I. 143, 155, 282 A.2d 584, 591 (1971). In *Pickering,* we observed that consent exclusions in insurance policies are enforceable because they serve an important purpose—"they safeguard the insurer's right of subrogation." *Id.* This statute provides insurers with a measure of financial protection. *See DiTata v. Aetna Casualty and Surety Co.,* 542 A.2d 245, 248 (R.I. 1988).

In the instant case, the Amica policy stated in part:

"A. We do not provide Uninsured Motorist Coverage for **bodily injury** sustained by any person:

\* \* \*

2. If that person or the legal representative settles a **bodily injury** claim without our consent."

■ It was conceded at oral argument that had plaintiff requested Amica's consent to settle with Metropolitan after the offer was made, Amica would have had no basis upon which to refuse consent. It is also undisputed that during the months when plaintiff had requested permission to settle, there had been no settlement offer from Metropolitan actually placed on the table to plaintiff which could have been communicated to Amica. Nevertheless, Amica conducted the asset check as a precautionary step. It is beyond question that Amica was in no way prejudiced by the failure to repeat the request for permission after the offer had been made. It is also true, as we have said in *Manzo v. Amica Mutual Insurance Co.,* 666 A.2d 417 (R.I.1995), that a showing of prejudice on the part of the underinsured motorist carrier is not necessary in order to deny coverage. We have also held that an insurance company has a fiduciary obligation to act in the " 'best interests of its insured \* \* \* [and to] refrain from acts that demonstrate greater concern for the insurer's monetary interest than the financial risk attendant to the insured's situation.' " *Asermely v. Allstate Insurance Co.,* 728 A.2d 461, 464 (R.I.1999). In that case we did not specifically consider whether such a fiduciary obligation extended to his or her relationship with his or her own insurer in an underinsured context. We have, however, stated in *Bolton v. Quincy Mutual Fire Insurance Co.,* 730 A.2d 1079, 1080–81 (R.I.1999), that "[w]hen an insurance company denies its insured permission to settle within a tortfeasor's policy limit, it exposes itself to an action in bad faith for breach of its obligation to its insured in situations where there is no obvious and reasonable basis for its refusal."

Amica argues that this obligation to respond reasonably and promptly to a request to settle for policy limits does not arise until an offer has been made. It is conceivable that Amica's argument might have merit in some factual contexts. However, here, the request was made before the offer. The asset check was run. No appreciable assets were discovered. It is conceded that if the request had been repeated, it could not have reasonably been refused.

In respect to the ruling relating to consent, an ancient maxim is applicable—"cessante ratione, cessat ipsa lex" (when there is no longer a reason for a rule, the rule ceases to be effective). We are of the

opinion that allowing Amica to deny coverage under the narrow facts of this case would be to elevate form over substance.

■ For the reasons stated, we sustain the plaintiff's appeal, reverse the judgment in favor of the defendant, and remand the case to the Superior Court with directions to enter judgment for the plaintiff that he is entitled to recover under the policy such amount as may be determined in an appropriate proceeding to be due and owing from the carrier, provided, however, that under the facts of the case we hold that Amica is not liable for bad faith.

FLANDERS, J., concurring.

I agree that, under the circumstances of this case, the insured's failure to obtain his underinsured-motorist (UIM) insurer's consent to settle with the tortfeasor should not preclude his ability to recover UIM benefits. But I would do so squarely on the basis that the UIM insurer has suffered no prejudice because of its insured's failure to obtain its consent before settling with the tortfeasor's insurer and the tortfeasor. Thus, I would apply the same rule in UIM cases involving an insured's failure to obtain the UIM insurer's consent to settle that applies in failure-to-timely-notify cases: unless the insurer can show resulting prejudice, the failure of the insured to obtain the UIM insurer's consent should not bar the insured's recovery under the UIM coverage provisions of the policy. *See, e.g., Pennsylvania General Insurance Co. v. Becton,* 475 A.2d 1032 (R.I.1984); *Pickering v. American Employers Insurance Co.,* 109 R.I. 143, 282 A.2d 584 (1971). I realize that the Court rejected this approach in *Manzo v. Amica Mutual Insurance Co.,* 666 A.2d 417 (R.I.1995), albeit it did so in a brief order that did not consider fully the merits of the no-prejudice approach embraced by our failure-to-timely-notify cases. But in reflecting upon this result, I believe that requiring the insurer to show prejudice in this context avoids the extreme forfeiture-of-coverage consequences that UIM insurance consumers would otherwise suffer in circumstances where no harm has occurred to the insurer because of its insured's failure to obtain its consent before settling with the tortfeasor.

On the other hand, I do not believe that Amica or other similarly situated UIM insurers have a duty to reply when their insureds request their approval to settle for the policy limits *before* any such settlement offers are actually pending. One critical purpose of the consent requirement is to allow the insurer to investigate whether the tortfeasor possesses sufficient assets beyond the policy limits to justify pursuing the lawsuit against the tortfeasor. Thus, before agreeing to its insured's proposal to settle for the policy limits and to release the tortfeasor(s) and the liability insurer(s) for any further damages that the insured may have sustained, the UIM insurer had the right to investigate the prospects for recovering a judgment from the tortfeasor over and above the available insurance coverage. Because the liability, damages, and collectability factors that must inform any sound judgment about whether to settle a lawsuit—including the alleged tortfeasor's financial status—can and do often change dramatically during the potential multi-year life of a litigated matter, the UIM insurer should not have to respond to an insured's premature consent-to-settlement request at the early stages of a lawsuit when a settlement offer is not yet even on the table. Any such rule requiring UIM insurers to respond to policy-limits settlement requests from their insureds before any such settlement offers are pending would result in needless, premature, and potentially meaningless asset searches; misinformed settlement decisions; and increased expenses to all concerned parties. By the same token, however, insureds who seek to recover under the UIM provisions of their own policies after settling with alleged tortfeasors and their insurers for the coverage limits of the tortfeasor's liability policy without first obtaining their UIM insurer's consent

should not be barred from proceeding on their UIM coverage claims unless their failure to obtain consent prejudiced their UIM insurers.

Because Amica was not prejudiced by the insured's failure to obtain its consent before accepting the settlement offer in this case, I concur in the Court's disposition of this appeal.