The MEMBERS MUTUAL INSURANCE COMPANY, Appellant,

v.

Sam S. CUTAIA, Appellee.

No. 374.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Nov. 18, 1970.

Rehearing Denied Dec. 9, 1970.

Gordon A. Holloway, Sewell, Junell & Riggs, Houston, for appellant.

Harry L. Tindall, Brown & Haden, Houston, for appellee.

SAM D. JOHNSON, Justice.

This action was brought by Sam S. Cutaia, appellee, against The Members Mutual Insurance Company, appellant, to recover on a policy of automobile liability insurance issued to William Smith. Cutaia had previously obtained judgment against Smith as a result of an automobile accident in which these two parties were involved. Appellee Cutaia thereafter brought the instant action against appellant, Members Mutual Insurance Company, on the automobile liability policy which had been issued to William Smith. From a judgment awarding appellee Cutaia the policy limit appellant Members Mutual has perfected appeal.

On July 3, 1963, Smith and the appellee Cutaia were involved in an automobile accident. At the time of the accident both Smith and Cutaia were insured by the appellant, Members Mutual. In addition to the insurance coverage it supplied to both Smith and Cutaia, Members Mutual had actual notice of this particular accident and began its investigation of it on or about July 5, 1963. In the latter part of that same month Smith was served with citation and petition as a result of the suit instituted against him by Cutaia.

Smith did not, however, forward the citation or petition to his liability insurance carrier, Members Mutual. Dow Claim Service, who initiated an investigation of the accident for Members Mutual, learned in the course of its investigation that Smith had not forwarded these papers to the insurance company. Upon obtaining this information Dow's Claim Service discontinued its investigation as it was aware of a policy defense on behalf of Members Mutual. It is not contested that this policy defense was the failure of the insured, Smith, to forward suit papers.

Some time later, on December 5, 1963, Smith signed a nonwaiver agreement with appellant, stating that Members Mutual could continue to act in relation to the accident without waiving any rights it might have to deny coverage under its policy. Dow Claim Service then, and only then, resumed its investigation. Subsequently, the law firm of McGregor, Sewell, Junell & Riggs, now Sewell, Junell & Riggs, filed an answer to Cutaia's suit against Smith. That suit resulted in a final judgment for $10,000 plus interest in favor of Cutaia against Smith. Subsequently, upon Members Mutual's refusal to pay this judgment (up to its policy limit of $5,000) Cutaia brought his second action, the instant suit. This action, that is the instant case, was defended by the same law firm, Sewell, Junell & Riggs, and resulted in judgment in favor of Cutaia against Members Mutual in the amount of the stated policy limit. This appeal by Members Mutual is from such judgment.

This case was tried upon two stipulations of fact agreed to by the parties. These stipulations included the following:

"IV.

"That The Members Mutual Insurance Company had actual notice of the occurrence of the accident on or about July 5, 1963. Thereafter Dow Claim Service, an independent claim service, conducted an investigation of said accident.

"V.

"That William Smith, the Defendant in Cause No. 623,685, styled Sam S. Cutaia vs. William Smith, and the insured of Members Mutual Insurance Company, was served with citation and petition on or about July 30, 1963.

"VI.

"That William Smith never forwarded citation and/or the petition to The Members Mutual Insurance Company subsequent to July 30, 1963, the date on which service was perfected in Cause No. 623,685, styled Sam S. Cutaia vs. William Smith.

"VII.

"That The Members Mutual Insurance Company was not prejudiced in any form, manner or fashion as a result of the failure to forward the citation and petition in Cause No. 623,685, styled Sam S. Cutaia vs. William Smith.

"VIII.

"That after Dow Claim Service became aware of the fact that William Smith had failed to forward the citation and the petition, it halted, ceased and terminated its investigation of the accident because Dow Claim Service was aware of a policy defense on the behalf of The Members Mutual Insurance Company.

"IX.

"That William Smith executed a non-waiver agreement on December 5, 1963, and it was not until after the execution of such non-waiver agreement that Dow Claim Service resumed its investigation of the accident.

\*     \*     \*     \*     \*     \*

"XI.

"That after the execution of the 'Authorization for Claims Service and Non-

Waiver of Rights' Agreement, the law firm of McGregor Sewell, Junell & Riggs, now Sewell, Junell & Riggs, filed an answer in Cause No. 623,685, styled Sam S. Cutaia vs. William Smith then pending in the 125th Judicial District Court of Harris County, Texas, on behalf of William Smith on December 26, 1963, and defended the suit for personal injuries brought by Sam S. Cutaia against William Smith.

"XII.

"That William Smith has never paid any portion of the judgment entered against him over and above the amount of his insurance coverage of $5,000.00."

Upon request the trial court filed findings of fact and conclusions of law. Said findings and conclusions include the following:

"That after Dow Claims Service discovered that William Smith had failed to forward the first set of suit papers, it halted, ceased and terminated its investigation of the accident. Thereafter an alias citation and petition were served on William Smith and these papers were promptly forwarded to The Members Mutual Insurance Company.

\*     \*     \*     \*     \*     \*

"The Court also concludes that while William Smith did not forward the original citation and petition in this cause, the prompt delivery of the alias citation and petition to the insurance company was substantial compliance with the insuring agreement and since there was no showing of prejudice to the insurer, William Smith is declared to have complied with this requirement of the insurance contract.

"3.

"The Court also concludes that since this was an accident involving fellow members of The Members Mutual Insurance Company, the company was placed in a special position of high trust

as to the legal dispute between its two members. Accordingly, the insurance company wrongfully breached both its duty of high trust and its fiduciary responsibility by raising a purely technical policy defense in favor of one member and against another member."

Appellant first contends that there is no evidence of insufficient evidence to support the trial court's finding that an alias citation was served on Smith and forwarded to Members Mutual. Appellant's points of error in this regard are sustained. In determining if there is any evidence to support the trial court's findings credence will be given only evidence favorable to the findings. Brown v. Frontier Theatres Inc., 369 S.W.2d 299 (Tex.Sup.1963); Nathan v. Hudson, 376 S.W.2d 856 (Tex. Civ.App.1964), writ ref., n. r. e. In determining whether the trial court's findings were contrary to the great weight and preponderance of the evidence the record as a whole will be considered. Warren Independent School Dist. v. Southern Neches Corp., 405 S.W.2d 100 (Tex.Civ. App.1965), writ ref., n. r. e., at 404 S.W. 2d 809.

■ At the outset it is clear that there was no specific stipulation to the effect that an alias citation was served upon Smith. Further, there is nothing in the record, except the defense of the lawsuit, which would even suggest the issuance of service and forwarding of an alias citation. The record does reflect appellant's actual knowledge of the suit against Smith and defense of the suit by appellant. This fact, however, neither provides evidence nor will support a finding that an alias citation was served and forwarded. Even in the light of appellant's actual knowledge of the accident and the initial investigation admittedly made, we find no support in the record for the challenged findings of fact. The trial court had no authority to find a fact not included in or compelled by the agreed statement of facts. Brown v. International Service Insurance Co., 449 S.W.2d 491 (Tex.Civ.App.1969), writ ref., n. r. e.

We do not, however, consider that such disposition on the foregoing points of error is controlling. The appellant, Members Mutual Insurance, concedes that it carried the insurance for both parties at the time of the collision, admits actual notice of the accident, and acknowledges that it defended the prior suit between its two insureds on behalf of Smith without prejudice. It is additionally apparent that the insurance company not only had every opportunity to investigate the accident but did so fully. Further, it is obvious that the insurance company's attorneys most capably defended both actions. It is against this background that we must view the candid admission on the part of the insurance company that it was not in any way prejudiced by the failure of its insured to make the original suit papers available to it. Members Mutual nevertheless contends that the failure of its own insured to forward suit papers was a breach of a condition precedent to the effectiveness of its liability insurance policy to the injured party, Cutaia, and asserts that recovery under the policy is therefore precluded.

Appellant places initial reliance upon New Amsterdam Cas. Co. v. Hamblen, 144 Tex. 306, 190 S.W.2d 56 (Tex.Sup.1945). There the insured under an indemnity policy failed to give notice to the insurance company of the citation served upon him within a reasonable time as required by the policy. The jury had found that no injury was incurred by the insurer due to this failure. The Court there stated:

" * * * The necessary implication from the entire provision, it seems to us, is that the parties understood that the general provision in the notice requirement, if left unqualified, invalidated all claims as to which immediate written notices were not given, and that the proviso was added to temper that harsh provision and make an exception in a case in which it is not reasonably possible to give such notice immediately.

That is the only exception placed upon the notice requirement and we are not authorized to add the further one that a showing that no loss or damage resulted from the delay would relieve the insurer of the consequences of his failure to give immediate notice. Our conclusion is that, viewing the notice requirement under its designation as a condition and in connection with the proviso, the necessary implication to be drawn therefrom is that failure to give notice of an accident or suit as soon as reasonably possible invalidates the claim for indemnity * * Petitioner has elected to insist on its rights under the contract and it is our function as a court to declare those rights. While the jury has found that petitioner suffered no loss or damage by the delay in this case, it is not difficult to see that an insurer charged with the duty of defending suits might, and in many cases would, be prejudiced by such delay. * * *"

Appellant also cites Klein v. Century Lloyds, 154 Tex. 160, 275 S.W.2d 95 (Tex. Sup.1955); Martin v. Traders & General Insurance Co., 258 S.W.2d 142 (Tex.Civ. App.1953), writ ref., n. r. e.; Womack v. Allstate Ins. Company, 156 Tex. 467, 296 S.W.2d 233 (Tex.Sup.1956); Pioneer Cas. Company v. Blackwell, 383 S.W.2d 216 (Tex.Civ.App.1964), writ. ref., n. r. e.; National Surety Corp. v. Wells, 287 F.2d 102 (5th Cir. 1961). See also National Surety Corp. v. Diggs, 272 S.W.2d 604 (Tex.Civ.App.1954), writ. ref., n. r. e.; White v. Transit Casualty Co., 402 S.W. 2d 212 (Tex.Civ.App.1966), writ. ref., n. r. e., and Underwriters at Lloyds, London v. Harkins, 427 S.W.2d 659 (Tex. Civ.App.1968), writ ref., n. r. e.

As we review the instant case it stands as an instance where the insurance company stands in a relationship of some degree of trust to both Smith and Cutaia. It was Smith's automobile liability insurance carrier and it was Cutaia's automobile collision insurance carrier. Both of these parties were motivated to purchase their insurance from Members Mutual of some confidence or reliance in this particular company. Apart from this consideration the company then had knowledge of the accident, every opportunity to investigate it, and finally did investigate it fully. Through its attorneys it defended the former suit and defended this action. The question is then presented: may the insurance company under these compelling circumstances avoid liability to an injured third party if it, the insurance company, has been in no way harmed or prejudiced by the failure of its own insured to forward the suit papers? We would answer in the negative.

It is to be noted that the case on which primary reliance is placed, Hamblen, supra, is an instance of failure to give notice of the accident and not of failure to forward suit papers. The requirement of notice and the requirement of forwarding suit papers exist independently of each other, and the fact that the insured complied with one of them, will not relieve him of his failure to comply with the other one, 18 A.L.R.2d 443, 455. There is a difference, however, as to the degree of seriousness and possibility of harm that results from the breach of each provision. While a breach of the notice provision may seriously prejudice an insurance company's investigation and defense of the suit, a noncompliance of the requirement of forwarding suit papers does not place the insured at a like disadvantage if it does, in fact, have actual notice of the pendency of the cause of action. If the insurer has actual knowledge of the circumstances of the cause of action against its insured, the only function the forwarding of the suit papers can serve is to emphasize the timeliness of the litigation.

In addition, Hamblen, supra, is generally cited where prejudice *has* resulted or where indemnity to the insured is the question involved rather than liability to an injured third party. In the present instance the concern is solely that of failure to forward suit papers, an instance where injury to a

third party has been established, and an instance where the failure of its *own insured* to forward suit papers has in no way harmed or prejudiced the insurance company in a suit filed by another of its insureds.

While it is the majority rule that when the insured fails to comply with the policy requirements as to notice or forwarding suit papers, prejudice to the insurance company need not be proven in order to relieve the company of liability under the policy, Hamblen, supra; State Farm Mutual Auto Ins. Co. v. Cassinelli, 67 Nev. 227, 216 P. 2d 606 (1950); there is a growing minority view that such non-compliance will not relieve the insurer of liability absent a showing of prejudice. "A number of courts have adopted the rule that the insurer, in order to be relieved of liability must show that it has suffered prejudice because of the insured's noncompliance as to notice or forwarding suit papers by being materially and substantially hampered in the making of its defense or in the discovery of facts." 18 A.L.R.2d 443, 482; United States Fidelity & Guaranty Co. v. Church, 107 F.Supp. 683 (D.C.Cal.1952); Greyhound Corp. v. Excess Insurance Company of America, 233 F.2d 630 (5th Cir. 1956); Wehner v. Foster, 331 Mich. 113, 49 N.W.2d 87 (1951); Flagg v. Puleio, 189 Pa.Super. 329, 150 A. 2d 400 (1959); Bowman Steel Corp. v. Lumbermens Mutual Casualty Co., 364 F. 2d 246 (3rd Cir. 1966). This rule has been criticized as placing too heavy a burden on the insurance company because " * * * in most cases the effect of the noncompliance is unknowable in any objective sense. What the insurer would have discovered had it been given timely notice and been able to conduct a prompt investigation or had it been given cooperation is problematical; it will generally have no more information at the time of the proceeding brought against it under the policy than it had at the time of the tort action. Thus, any evaluation by court or jury as to the prejudicial effect of the noncompliance must be entirely conjectural." 68 Harvard L.Rev. 1436, 1438. Whatever validity such criticism possesses is wholly lost, however,

where, as in the instant case, the insurance company has *actual* notice of the accident, has fully investigated it, has *actual* notice of the suit and has ably defended it.

Other courts have adopted the rule that prejudice will be presumed from the insured's failure to comply with the notice and forwarding suit paper requirements. Artukovich Bros., Inc. v. St. Paul-Mercury Indemnity Co., 150 Cal.App.2d 312, 310 P. 2d 461 (1957); American Fire & Casualty Co. v. Collura, 163 So.2d 784 (Fla.App. 1964); Calhoun v. Western Casualty & Surety Co., 260 Wis. 34, 49 N.W.2d 911 (1951). This presumption is not conclusive, however, and may be overcome by evidence that no actual prejudice occurred. Thus, under this doctrine, the insured party rather than the insurance company has the burden of proving that the insurance company was not prejudiced by the insured's noncompliance. This doctrine has the advantage of lessening the practical difficulty of placing the burden of proof on the insurance company. 51 Mich.L.Rev. 275, 280.

The requirement that prejudice be shown before permitting the insurance company to set up the defense of noncompliance with the notice of forwarding of suit papers policy provisions is founded upon sound policy considerations. One justification for this rule is the fact that the insurance contract is not a negotiated agreement. The New Jersey Supreme Court in Cooper v. Government Employees Insurance Co., 51 N.J. 86, 237 A.2d 870 (1968), discussed the adhesion quality of the insurance contract in the following language:

" * * * /S/ince then we have recognized that the terms of an insurance policy are not talked out or bargained for as in the case of contracts generally, that the insured is chargeable with its terms because of a business utility rather than because he read and understood them, and hence an insurance contract should be read to accord with the reasonable expectations of the purchaser so far as its language will permit."

We do not think it could be argued that the terms contained in the instant policy were negotiated and we note in this connection that the automobile liability contract is a standard one.

Another justification for this rule is the fact that it promotes the social function of insurance coverage by providing compensation for injuries incurred by innocent members of the public. 74 Dickinson L.Rev. 260, 270–271. In Cooper, supra, the Court stated:

"And although the policy may speak of the notice provision in terms of a 'condition precedent', as Whittle observed, nonetheless what is involved is a forfeiture, for the carrier seeks, on account of a breach of that provision, to deny the insured the very thing paid for. This is not to belittle the need for notice of an accident, but rather to put the subject in perspective. Thus viewed, it becomes unreasonable to read the provision unrealistically or to find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach. To do so would be unfair to insureds. It would also disserve the public interest, for insurance is an instrument of a social policy that the victims of negligence be compensated. To that end companies are franchised to sell coverage. We should therefore be mindful also of the victims of accidental events in deciding whether a forfeiture should be upheld."

This standard mitigates the harsh result of "denying recovery against the insurer for an injury clearly falling within the terms of the policy because an impecunious assured, who may be irresponsible or apathetic, has failed to comply with the notice clause." 68 Harv.L.Rev. 1436, 1437.

A third advantage of this rule is the fact that the interpretation of the notice and forwarding of suit papers policy provisions is guided more by its purpose than by its seemingly conclusive terms. Miller v. Marcantel, 221 So.2d 557 (LaApp.1969);

Cooper v. Government Employees Ins. Co., supra. "The function of the notice provision is to prevent prejudice to the insurer, and unless prejudice has been proven, the condition precedent has, in essence, been complied with." 74 Dickinson L.Rev., 260, 264. In Miller v. Marcantel, supra, the Court stated:

"The function of the notice requirement is simply to prevent the insurer from being prejudiced, not to provide a technical escape-hatch by which to deny coverage in the absence of prejudice nor to evade the fundamental protective purpose of the insurance contract to assure the insured and the general public that liability claims will be paid up to the policy limits for which premiums were collected."

There are two Texas decisions which lend support to the view that proof of prejudice is a material factor in the decision of whether the insurance company is relieved of liability because of the insured's noncompliance with the policy provisions. In Century Lloyds v. Barnett, 259 S.W.2d 768 (Tex.Civ.App., Waco, 1953), writ ref., the defense was raised that the insured was late in forwarding suit papers in violation of the insurance policy and rejecting this contention the Court held:

"This record shows that Century Lloyds had immediate notice of Green's accident; that he gave his story as to how the accident happened to Meers Claim Service, and after they made their investigation, under authority of Century Lloyds, they tried to settle the case but failed. Thereafter the Barnetts caused suit to be filed. In the meantime Green's employment had taken him to Snyder, Texas, where he was engaged in the pursuit of his occupation, and Century Lloyds contacted him there through their agents. Under the jury's findings, Century Lloyds promised to furnish Green his expenses to attend the trial of the case. In the meantime the carrier filed only a general denial, and it does not appear that Century Lloyds made any at-

tempt to obtain further statements of information from Green. It is true that there was a slight delay on the part of Green in mailing citation to Century Lloyds, but there is *no evidence that such failure in any way prejudiced the rights of the carrier.* * * *" (Emphasis added).

We take particular note that writ of error was outright refused in this case.

In Olgin v. Employers Mut. Casualty Co., 228 S.W.2d 552 (Tex.Civ.App., San Antonio, 1950), writ ref., n. r. e., the same defense was raised. In rejecting the insurance company's position the court held:

"Appellee contends that there should be no liability here on its part because M. Torres did not deliver to it the copy of the citation served upon him in the original suit, as he was required to do under the provisions of the indemnity policy issued by appellee. We overrule this contention. Torres was served with a citation on August 4, 1947, and on August 14, 1947, appellee secured from him a non-waiver agreement. Appellee's attorneys appeared at the trial and defended the suit as to National By-Products, Inc., and used M. Torres as a witness. Under such facts appellee *fails to show that it was injured* in any way by Torres' failure to deliver to it the copy of the citation served upon him." (Emphasis added).

■ We are of the opinion that it does not follow reason to allow the avoidance of liability under circumstances such as are presented in the instant case unless there has been some prejudice, however slight, to the insurance company. Stated another way, it stands as inequitable to allow a party who has received the benefits of a contractual relationship to admit that it has suffered absolutely no harm or prejudice and yet be permitted to avoid liability on such contract because it has not been supplied with what it does not need, the suit papers. It has not been suggested that such papers would have been of the slightest value to the company, nor could it be. The

reasons behind the provision have all failed. There was knowledge of the accident, knowledge of the suit, opportunity to investigate and participation in the original and present litigation. Compliance with the provision in this instance would be no more than a response to a technical requirement wholly without benefit of any nature to the company. We believe it to be unconscionable to allow liability to be avoided on ground that a technical requirement has not been met unless there is a showing of some harm or prejudice to the one standing behind such requirement. This is especially true where the requirement is to be filled *not* by the injured party (Cutaia) but by the insured (Smith).

Courts in other jurisdictions have held that the insured's failure to give notice of an accident and of the pendency of an action against him by the injured person does not prevent such injured person from bringing an action on the policy itself against the insurance company. Sanders v. Travelers Indemnity Co., 144 F.Supp. 742 (D.C., N.C. 1956); Karp v. Aetna Casualty & Surety Co., 21 Misc.2d 487, 201 N.Y.S.2d 421 (1959); Jameson v. Farmers Mutual Auto Ins. Co., 181 Kan. 120, 309 P.2d 394 (1957). These decisions are generally based upon specific statutory enactments. Under the Missouri Motor Vehicle Law which provides "it is hereby declared that the legislation herein contained is enacted for the sole purpose of promoting and conserving the interest and convenience of the public," (Mo.St.Ann., Sec. 5280, p. 6695, it was held that the right of persons injured is not dependent upon the insured's right to recover and therefore the insurance company may not plead the lack of notice of suit as a bar. Trinity Universal Ins. Co. v. Cunningham, 107 F.2d 857 (8th Cir. 1939). The Compulsory Motor Vehicle Liability Insurance Act of Massachusetts, M.G.L.A. c. 175 § 113A, specifically provides that "No violation of the terms of the policy and no act or default of the insured * * * shall operate to defeat or avoid the policy so as to bar recovery * * * by a judgment creditor." Under this act it has been held that it was

not the intention of the legislature that the rights of the injured party should depend on the right of the insured. Wheeler v. O'Connell, 297 Mass. 549, 9 N.E.2d 544 (1937). Under statutes which grant each person the independent right to give notice and to recovery thereafter, the injured party is not charged vicariously with the insured's noncompliance with the policy provisions. De Abreu v. Lumberman's Mutual Cas. Co., 32 Misc.2d 634, 223 N.Y.S.2d 953 (1961).

In the Texas case of Pan-American Cas. Co. v. Basso, 252 S.W.2d 505 (Tex.Civ. App.1952), err. ref., a city ordinance requiring transportation companies to post bond or insurance policies covering its automobiles provided that such requirement was for the benefit of every judgment creditor who has been injured through the negligent operation of its automobiles. Because the insurance covered a taxicab as defined in this ordinance, the ordinance was read into the insurance contract and became a part thereof. The Court stated that the contract of insurance was not one merely indemnifying the insured against liability, but one contracting to any injured judgment creditor the amount of his judgment obtained under the provision of the ordinance and within the amount specified in the policy, notwithstanding the insured's failure to give notice as required by the insurance policy. As noted writ of error was outright refused.

A quarter of a century has passed since the court's opinion in Hamblen, supra, and during these years the automobile has become a practical necessity. Only a fraction of society does not view and use the automobile as an absolute requirement to necessary communication. During these same years, automobile liability insurance has come under great scrutiny as the allied practical necessity for that insurance has been evidenced. Just as the automobile is an absolute requirement to communication, so is liability insurance an absolute requirement to public protection, for few would question that the majority of drivers on our public roads do not have assets which may be reached by actions taken against them based upon judgments arising out of the collisions which inevitably occur. It is apparent that one of the strongest legislative purposes in making automobile liability insurance a virtual requirement of driving was to provide protection for injured third parties. See Vernon's Ann.Civ.St. art. 6701h, the Texas Motor Vehicle Safety Responsibility Act. Under the theory of the Basso case, this legislative purpose could be considered to be a part of all liability insurance policies and thus provide protection for injured third parties, notwithstanding the insured's noncompliance with the notice or forwarding suit paper requirements.

In response to the present fact situation we hold that where the insurance company has actual notice of the accident and fully investigates it, the insurance company has notice of the cause of action against its insured by the injured third party, and the insurance company investigates and defends its insured against such cause of action that there must be a determination of prejudice to the rights of the company before it can avoid liability to the injured third party on the ground that its insured did not comply with the policy provision requiring the forwarding of suit papers.

Appellant's last point of error complains of the trial court's finding that appellants had a duty of high trust in relation to Smith and appellee since it insured both parties. By virtue of the foregoing holdings this point is not material to the disposition here made.

The judgment is affirmed.