Henry DARDEN, Bonnie Darden, Rhoda D. Carmon, Regina G. Booker, Angela Darden, Sonda Broussard, and Robert Allen Darden, Appellants,

v.

KITZ CORPORATION, Kitz Corporation of America, and Travelers Indemnity of Rhode Island, Appellees.

No. 09–98–015CV.

Court of Appeals of Texas, Beaumont.

Submitted June 24, 1999.

Decided Aug. 12, 1999.

John F. Sullivan, III, D. Dudley Oldham, Warren S. Huang, Fulbright & Jaworski, Houston, for appellees.

Anthony P. Griffin, Terry L. Weir, Anthony P. Griffin, Inc., Galveston, for appellants.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

The issue presented in this appeal concerns the legality of a settlement agreement. Henry Darden was injured in the scope of his employment with Goodyear Tire & Rubber Company. Henry Darden, his wife, Bonnie Darden, and his adult children, Rhoda D. Carmon, Regina Booker, Angela Darden, Sonda Broussard, and Robert Allen Darden sued Kitz Corporation, Kitz Corporation of America, and W–K–M, a Division of ACF Industries Incorporated.[1] Darden pleaded theories of negligence, products liability, and deceptive trade practices. W–K–M was succeeded by Cooper Industries, Inc., and Cooper Cameron Corporation during the course of the litigation. Travelers Indemnity of Rhode Island filed an intervention against Henry Darden, Kitz, and W–K–M, alleging it was subrogated to the rights of Henry Darden under the workers' compensation act.

⸱ On April 17, 1995, Darden and Kitz executed a settlement agreement. Kitz paid Darden $1,4000,000 and retained a contingent right to reimbursement from Darden up to $750,000. In the event Darden recovered from a third party, Kitz was entitled to fifty percent of the amounts recovered until the maximum reimbursement was met. Darden agreed to non-suit Kitz with prejudice. The agreement specified Kitz would not be required to participate in the trial of the suit and would have no involvement in settlement negotiations. Darden agreed to indemnify Kitz from any third party claims. The agreement contained a severability clause. The settlement agreement was not filed with the trial court. On June 26, 1995, the trial court signed the order dismissing with

---

1. For ease of reference, Kitz Corporation and Kitz Corporation of America are collectively referred to as "Kitz." W–K–M, a Division of ACF Industries Incorporated, and its successors Cooper Industries, Inc., and Cooper Cameron Corporation, are all referred to as "W–K–M." Henry Darden, Bonnie Darden, Regina Booker, Angela Darden, Sonda Broussard, Rhoda Carmon, and Robert Darden are collectively referred to as "Darden." Travelers Indemnity of Rhode Island is referred to as "Travelers."

prejudice both Darden's and Travelers's claims against Kitz. The court did not sever that part of the suit.

Darden filed a motion to allocate the worker's compensation lien. On May 15, 1995, the trial court ordered Travelers be paid $404,920.95 in reimbursement of its worker's compensation lien. Travelers executed a release of Kitz.

Darden retained new counsel. On November 6, 1995, Darden filed a motion to declare parts of the settlement agreement illegal. The portion of the settlement agreement Darden contended was illegal was Kitz's right to reimbursement and Darden's agreement to indemnify Kitz from any third party contribution claims. In response to the motion, Kitz filed a brief that argued the settlement agreement was not a Mary Carter agreement, and that in the event the court invalidated the agreement, it would be entitled to a return of all the settlement funds. On March 27, 1996, the trial court signed an order denying Darden's motion to declare part of the settlement agreement void.

Darden settled with W–K–M for $700,000. On September 22, 1997, the trial court signed an order that severed Darden's and Travelers's claims against W–K–M from the remainder of the suit, ordered W–K–M to deposit $400,000 of the settlement proceeds into the registry of the court, and entered a take-nothing judgment on both Darden's and Travelers's claims against W–K–M. This order stated, "All relief not expressly granted herein is denied."

W–K–M never filed a cross action or contribution claim against Kitz.

On November 14, 1997, Kitz filed a motion to withdraw $350,000 of the funds from the registry of the court, in enforcement of its settlement agreement with Darden. On November 19, 1997, Darden filed a response that re-urged its motion to declare the Kitz settlement void. Travelers filed a motion to withdraw a portion of the funds from the registry of the court.[2] A "Nunc Pro Tunc Order" signed on December 1, 1997, directed the clerk to release $350,000 of registry funds, plus accumulated interest, to Kitz. On December 16, 1997, the trial court entered an amended order directing the clerk of the court to release $43,494.04 of registry funds to Travelers and release $6,505.96 plus "the interest incurred on the Fifty Thousand" to Darden's attorney. The same day, the trial court entered an order non-suiting Travelers's claims against Darden. This order stated, "All parties and issues in this litigation are now resolved. This constitutes a final judgment."

Darden filed notice of appeal on January 15, 1998.

■ Kitz contends we do not have jurisdiction over this appeal because Darden's notice of appeal was not filed within the time permitted by the rules. Kitz argues, as it did before the trial court, that the June 25, 1995, order disposed of Darden's and Travelers's claims against Kitz, and the September 22, 1997, order disposed of the only remaining claims, those of Darden and Travelers against W–K–M, so that the appellate timetable ran from the signing of the September 22, 1997, order. We disagree. Travelers sued Henry Darden. On September 22, 1997, the trial court had not yet resolved the dispute between Henry Darden and Travelers regarding the amount of the worker's compensation lien that was owed to Travelers.

■ The procedure relating to finality of judgments is intended to be easily understood and followed, although time and time again it has proven to be difficult and confusing in practice. To be a "final" judgment subject to appeal, the judgment must dispose of all parties and all issues. *North East Indep. Sch. Dist. v. Aldridge,* 400 S.W.2d 893, 895 (Tex.1966). The "Mother Hubbard" clause, "all relief not expressly granted is denied," unambigu-

---

**2.** We have not located this motion in the record.

ously indicates that the judgment is final. *Id.* at 898. A judgment entered after a conventional trial on the merits is final even absent clear language of finality. *Id.* at 898. Even a summary judgment will be considered to be final if it contains a Mother Hubbard clause. *Mafrige v. Ross,* 866 S.W.2d 590, 591 (Tex.1993).[3] Where there are multiple parties or claims resolved at different times, part of the litigation may be made final through severance. When a severance order is signed, the appellate timetable in the severed cause runs from the signing date of the order that made the judgment severed "final" and appealable. *Martinez v. Humble Sand & Gravel, Inc.,* 875 S.W.2d 311, 312–13 (Tex.1994). It does not matter when a separate physical file is created. *McRoberts v. Ryals,* 863 S.W.2d 450, 454–55 (Tex.1993). A document that should be filed in the severed cause will not be rendered ineffective because it is filed in the parent cause. *Mueller v. Saravia,* 826 S.W.2d 608, 609 (Tex.1992).

Kitz argues the September 22, 1997, order was the final order in this cause because it contained a Mother Hubbard clause. The trial court severed all the claims involving W–K–M and entered a final judgment on those claims in a single order. Although the order does not give the severed cause a number, it clearly creates a severed cause. We hold the Mother Hubbard clause operated to make final and appealable *only* that part of the cause that was severed in the order, namely, Darden's and Travelers's claims against W–K–M. It had no effect on Travelers's claim against Darden. The only other court order containing language of finality is the December 16, 1997, order, which, together with the disbursement order signed the same day, resolved all the remaining controversy. Darden filed notice of appeal within 30 days of the signing of that order. *See* Tex.R.App. P. 26.1. We conclude Darden timely perfected appeal.

Darden presents two issues: 1) "Kitz Corporation and Kitz Corporation of America retained an interest in the lawsuit as well as remained parties to the lawsuit by virtue of the failure of the parties to follow the dictates of Rule 11;" and 2) "Public policy militates against Mary Carter agreements and as a matter of law and equity the agreement should be declared illegal."

■■■ "A Mary Carter agreement exists when the settling defendant retains a financial stake in the plaintiff's recovery *and* remains a party at the trial of the case." *Elbaor v. Smith,* 845 S.W.2d 240, 247 (Tex.1992). "The participation requirement is satisfied by the mere presence of the settling defendant as a party in the case." *Id.* at 247, n. 14. Mary Carter agreements tend to promote litigation rather than settle it "because they grant the settling defendant veto power over any proposed settlement between the plaintiff and any remaining defendant." *Id.* at 248. They "present to the jury a sham of adversity between the plaintiff and [a settling defendant], while these parties are actually allied for the purpose of securing a substantial judgment for the plaintiff and, in some cases, exoneration for the settling defendant." *Id.* at 249 (quoting June F. Entman, *Mary Carter Agreements: An Assessment of Attempted Solutions,* 38 U.Fla.L.Rev. 521, 574 (1986)). Mary Carter agreements are void because they violate public policy. *Id.* at 250.

■■■ Darden argues Kitz remained a party to the case, although the trial court signed an order dismissing Kitz with prejudice, because that order was not severed from the rest of the suit. We disagree. An order of dismissal with prejudice signed in response to a motion to dismiss filed by settling parties is binding and will support a plea in bar if the plaintiff seeks to revive his action against the dismissed defendant. *See Durden v. City of Grand*

---

**3.** For recent application and discussion of *Mafrige, see Midkiff v. Hancock East Texas*

*Sanitation, Inc.,* 996 S.W.2d 414 (Tex.App.— Beaumont, no pet. h.).

*Prairie,* 626 S.W.2d 345, 347 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.). Apart from its preclusive effect, which depends upon whether the dismissal was with prejudice or without prejudice, an order of dismissal effectively removes the dismissed party from the litigation. *See Serna v. Reyna,* 418 S.W.2d 701, 706 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n.r.e.). Once the judge signed the order of dismissal, Kitz was no longer a party to the pending litigation the same as if Kitz had been removed from the litigation by amendment of Darden's pleadings. *Cf. Johnson v. Coca-Cola Co.,* 727 S.W.2d 756, 758 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). Absent a severance, so long as any issues and parties remained in controversy, the order was interlocutory and could be withdrawn by the trial court. *See Webb v. Jorns,* 488 S.W.2d 407, 408–09 (Tex. 1972) (defendant dismissed without prejudice could be re-joined in suit provided limitations had not run); *Bell v. Moores,* 832 S.W.2d 749, 754 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (dismissal merged with decree to make judgment final); *City of Houston v. Socony Mobil Oil Co.,* 421 S.W.2d 427, 430 (Tex.Civ.App.—Houston [1st Dist.] 1967, writ ref'd n.r.e.) ("Once an interlocutory summary judgment is entered, the issues decided cannot be further litigated unless the judgment is set aside by the trial court, or unless the summary judgment is reversed on appeal. An interlocutory summary judgment is not appealable until a final judgment is entered disposing of all parties and issues in the cause."). Had the trial court withdrawn the order of dismissal with prejudice, Kitz would again be a party to the litigation and the settlement agreement would meet that prong of the *Elbaor* test. It simply did not happen.

Kitz was never brought back into the litigation through the filing of a third party claim. Travelers settled with Kitz and joined in the Darden dismissal, so Kitz was not kept in the litigation through an indemnity claim. Likewise, W–K–M might have filed a contribution claim, thus bringing Kitz back into the litigation. Had that occurred, Kitz would again be a party to the litigation and the settlement agreement would meet the *Elbaor* test. *See Bristol–Myers Co. v. Gonzales,* 561 S.W.2d 801, 805 (Tex.1978); *St. Paul Surplus Lines Ins. Co., Inc. v. Dal–Worth Tank Co., Inc.,* 917 S.W.2d 29, 41–42 (Tex.App.—Amarillo 1995), *rev'd in part on other grounds,* 974 S.W.2d 51, 53 (Tex.1998). Moreover, W–K–M might have settled under protest, building a record that it settled with Darden because the Kitz settlement made the specter of a jury trial untenable. Had it done so, we might have concluded both settlements were tainted. But this potential injustice never manifested.

Speculation aside, Kitz was dismissed as a party on June 26, 1995, and never brought back in except through Darden's efforts to avoid that part of the settlement agreement which required Darden to return part of the settlement to Kitz. We hold the Kitz settlement agreement was not a Mary Carter agreement.

 Darden argues the settlement agreement was unenforceable because the parties failed to comply with Rule 11 of the Texas Rules of Civil Procedure. To be enforceable, an agreement in a pending suit must be in writing, signed and filed with the papers as part of the record. Tex.R. Civ. P. 11. The settlement agreement was written and signed by all of the plaintiffs and their attorney. Kitz paid the $1,400,000 settlement to Darden and Travelers. Darden and Travelers filed a joint motion to dismiss Kitz with prejudice. The Dardens did not withdraw their consent before the trial court signed the order dismissing Kitz with prejudice. Rule 11 does not require a writing to be filed in the trial court before the other party withdraws its consent; the filing requirement is satisfied "so long as the agreement is filed before it is sought to be enforced." *Padilla v. LaFrance,* 907 S.W.2d 454, 461 (Tex.1995). Although the Dardens did in-

dicate their desire to avoid their obligations under the written agreement before the W–K–M settlement triggered their obligation to reimburse Kitz, the agreement was filed in the record before the trial court enforced it.

We hold the trial court did not err in denying the Dardens' motion to declare parts of the settlement agreement illegal. Points of error on and two are overruled. The trial court's judgment is affirmed.

AFFIRMED.