**Vacated in Part, Appeal Dismissed, and Opinion filed April 6, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00295-CV

---

### PREMIER TOWERS, LP, Appellant

### V.

### BARBARA CARMICHAEL, HUGH CARMICHAEL, MARY DOYLE, ED KIEKE, JOY BLEVINS, CHARLIE SCOTT, ANGELA SOLCE, DAVID SOLCE, DONNA YACOE, PETER YACOE, AND NICOLE MCNALLY, INDIVIDUALLY AND ON BEHALF OF COMMERCE TOWERS CONDOMINIUM ASSOCIATION, INC., AS WELL AS ANTHONY TARANTINO, JOHN P. FRESE, AND CHARLES VICKERS, Appellees

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-73895**

---

## O P I N I O N

In an earlier appeal in this case, we affirmed appellant Premier Towers, LP's dismissal from the lawsuit for lack of subject-matter jurisdiction. In this appeal, we are asked whether, on remand, the trial court had subject-matter jurisdiction to effectively render judgment against Premier. The answer is no. Because the

judgment against the dismissed party is void, we vacate that portion of the judgment and dismiss the appeal.

## I. BACKGROUND[1]

Premier owned and developed a former office building to include a condominium regime. Premier excepted from the condominium regime certain areas designated as retail space, which Premier leased for its own benefit. All condominium owners are members of the Commerce Towers Condominium Association, Inc. (the Association). The plaintiffs—collectively, "the Members"— are present or former members of the Association.[2]

Premier appointed Anthony Tarantino, Charles L. Vickers, and John Patrick Frese to the Association's board of directors. Frese was both the president of the Association and the vice president of Premier's sole general partner. We refer to Tarantino, Vickers, and Frese collectively as "the Officers."

At Premier's direction, Premier and the Association entered into a "Joint Use and Reciprocal Easements Agreement," which the parties generally refer to as "the JUA." The JUA granted Premier a non-exclusive easement to use certain general common elements of the building for the benefit of Premier, Premier's tenants, and the agents, suppliers, employees, patrons, and invitees of Premier or its tenants. Although condominium owners were required to contribute to the cost of maintaining these areas, Premier and its tenants were not.

---

[1] We include in this section material taken from the Members' and Officers' agreed statement of facts.

[2] The plaintiffs are Barbara Carmichael, Hugh Carmichael, Mary Doyle, Ed Kieke, Joy Blevins, Charlie Scott, Angela Solce, David Solce, Donna Yacoe, Peter Yacoe, and Nicole McNally.

Frese signed the JUA on behalf of the Association. The Association's articles of incorporation allow the Association to contract or transact business with affiliates of its directors and officers provided the act is approved or ratified by a majority of disinterested directors. No disinterested officers or directors of the Association approved the JUA.

## A.     The First Trial Proceedings and Appeal

The Members, both individually and derivatively on behalf of the Association, sued Premier, the Officers, and the property-management company that provided services to the building. The Officers and the property-management company filed a plea to the jurisdiction challenging the Members' standing to bring derivative claims. The trial court granted the plea and dismissed all of the Members' derivative claims, including the claims against Premier. The Members then filed a notice of non-suit of the claims they brought in their individual capacities,[3] and the trial court signed an order of dismissal finally disposing of "all remaining parties and claims."

On appeal, we held that the Members have derivative standing to assert only the Association's claims against the Officers for their allegedly ultra vires acts. *See Carmichael v. Tarantino Props., Inc.*, 604 S.W.3d 469, 475–81 (Tex. App.—Houston [14th Dist.] 2020, no pet.). We affirmed the remainder of the judgment, including the dismissal of the Members' derivative claims against Premier and the property management company. *See id.* at 481–82.

## B.     Trial Proceedings on Remand

On remand, the Members and the Officers submitted an agreed statement of facts. Based on their contention that the Officers' conduct in entering into or

---

[3] Henceforth, we refer to the Members only in their derivative capacities as representatives of the Association.

approving the JUA was ultra vires, the Members moved for rendition of judgment declaring the JUA ultra vires and void. In their proposed judgment, the Members also added language stating that the JUA is rescinded. The Officers filed no opposition to the motion, and the trial court signed the proposed judgment two weeks later.

Within thirty days of the judgment, Premier filed a petition in intervention "for the limited purpose of moving to set aside the Final Judgment." In the petition, Premier moved to set aside the final judgment and for "a new trial between Plaintiffs and the Officers (as Plaintiffs still have no standing to assert derivative claims against Premier)." The Members moved to strike the petition on the ground that Premier cannot properly be an intervenor because it is already a party.[4] The trial court granted the Members' motion and expressly stated in its order that Premier is a party to the final judgment. The trial court denied Premier's motion for new trial, and Premier appealed.

## II. JURISDICTION

Before reaching the merits of an appellant's issues,[5] an appellate court first must determine whether it has jurisdiction to do so. *Freedom Commc'ns, Inc. v.*

---

[4] The Officers moved to strike the petition as well, they but did so on grounds that acknowledged Premier is a non-party, arguing, for example, that Premier is not bound by the judgment and waited too long to intervene. The Officers do not re-urge these arguments on appeal, affirmatively stating that they express no position on such issues. They ask only that this Court leave intact that part of the judgment declaring that the Officers and the Association "have no liability for damages as the result of the events that form the basis" of the suit.

[5] In four issues, Premier argues that (1) Premier was not a party to the final judgment, and thus, the trial court erred in striking its petition in intervention; (2) if Premier was a party, then the trial court erred in rendering judgment on an "agreed statement of facts" that was not agreed upon by all of the parties; (3) the trial court applied the law incorrectly to the agreed statement of facts because, as a matter of law, a corporation's act is not invalid simply because the act was beyond the scope of the corporation's purposes or was inconsistent with a limitation on an officer's or director's authority; and (4) the trial court erred in denying Premier's motion for new trial.

*Coronado*, 372 S.W.3d 621, 624 (Tex. 2012). Under the circumstances presented here, that determination turns on the answers to two questions of law, which we review de novo. *See Harris Cnty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018).

First, does Premier have standing to appeal the challenged parts of the judgment? We must determine this because "[s]tanding is implicit in the concept of subject-matter jurisdiction, and subject-matter jurisdiction is essential to the authority of a court to decide a case." *In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) (orig. proceeding) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd*., 852 S.W.2d 440, 443 (Tex. 1993)). Thus, if Premier lacks standing to appeal the judgment, then this Court lacks subject-matter jurisdiction to address the merits of that appeal.

Second, did the trial court have jurisdiction to render the challenged parts of the judgment? This, too, is an essential determination because "[i]f a trial court lacks subject-matter jurisdiction to make the challenged ruling, then the ruling is void." *Doan v. TransCanada Keystone Pipeline, LP*, 542 S.W.3d 794, 806 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990) (orig. proceeding) (per curiam)). "And if a ruling is void, then the appellate court lacks jurisdiction to review the ruling's merits." *Id.* (citing *Phillips v. Bramlett*, 407 S.W.3d 229, 236 (Tex. 2013) and *Waite v. Waite*, 150 S.W.3d 797, 800 (Tex. App.—Houston [14th Dist.] 2004, pet. denied)).

## A.    Premier Has Standing to Appeal.

We need not consider Premier's virtual-representation arguments to determine that Premier has standing to appeal. Quite simply, Premier has standing to appeal because it had been a named defendant, and it is aggrieved by the judgment against it. That is enough. *Cf. City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 754 (Tex. 2003) ("[A]n appeal can generally only be brought by a named party to the suit."); *Reyes v. S. Vanguard Ins. Co*., No. 14-19-00728-CV,

2020 WL 6741942, at *3 (Tex. App.—Houston [14th Dist.] Nov. 17, 2020, no pet.) ("A person generally has standing to appeal a ruling only if the person is personally aggrieved by it."). While it is true that in the interval between those two events, Premier was dismissed from the suit for lack of subject-matter jurisdiction (and we affirmed that dismissal), that fact goes to whether the trial court's judgment against Premier is void, not to Premier's standing to appeal the judgment.

**B.      The Judgment Against Premier Is Void for Lack of Jurisdiction.**

Although the parties focus their appellate arguments on whether Premier was still a party to the case when judgment was rendered, such arguments can be misleading given the many senses in which the word "party" can be used. In one sense, a person is "party" simply by being named in a lawsuit, regardless of whether the trial court can exercise personal or subject-matter jurisdiction over that person. *See, e.g.*, *Zanchi v. Lane*, 408 S.W.3d 373, 377 (Tex. 2013). In that sense, Premier is a party, and it is in that sense of the word that Premier is a "party" with standing to appeal. On the other hand, a person named as a defendant and who seeks no affirmative relief effectively ceases to be a party to the lawsuit when all of the claims against it have been voluntarily or involuntarily dismissed.[6] In that sense, Premier is not a party because it asserted no claims and was dismissed from the case over a year before the trial court rendered the challenged judgment.

---

[6] *See, e.g.*, TEX. R. CIV. P. 41 ("Parties may be dropped . . . by order of the court on motion of any party or on its own initiative at any stage of the action, before the time of submission to the jury or to the court if trial is without a jury, on such terms as are just."); TEX. R. CIV. P. 163 ("Dismissal as to *Parties* Served") (emphasis added); *Darden v. Kitz Corp.*, 997 S.W.2d 388, 392–93 (Tex. App.—Beaumont 1999, pet. denied) ("[A]n order of dismissal effectively removes the dismissed party from the litigation."); *cf. Johnson v. Coca-Cola Co.*, 727 S.W.2d 756, 758 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) ("The filing of an amended petition omitting an individual or entity as a party defendant has the effect of dismissing such party the same as if a formal dismissal order had been entered.").

Stripped of these semantics, the crux of the matter is this: In granting the Members declaratory and equitable relief concerning the JUA (i.e., declaring the JUA ultra vires, null, and void, and in rescinding it), did the trial court render judgment against Premier or against the Officers? If such declaratory and equitable relief is a judgment against Premier, then those parts of the judgment are void for lack of subject-matter jurisdiction. On the other hand, if this declaratory and equitable relief is instead a judgment only against the Officers, then the award of declaratory and equitable relief is not void, and we must go on to decide whether those portions of the judgment bind Premier, and if so, whether those portions of the judgment are voidable. We conclude, however, that this declaratory and equitable relief was rendered against Premier, and that those portions of the judgment are accordingly void.

As we explained in the first appeal, the Members lack standing to assert *any* derivative claims against Premier. *See Carmichael*, 478–81. The sole claims remaining on remand were the Members' claims that the Officers breached fiduciary duties to the Association by committing ultra vires acts.

But the trial court did not render judgment that the Officers breached any fiduciary duties. The trial court said of the Officers only that,

> [i]t is further ORDERED, ADJUDGED, AND DECREED that DEFENDANTS and the Commerce Towers Condominium Association, Inc. have no liability for damages as the result of the events that form the basis of the above-styled lawsuit.

This part of the judgment is unchallenged.

> But the trial court nevertheless had this to say about the JUA:

> The Court, after hearing the evidence and arguments of counsel, is of the opinion that Plaintiffs have prevailed on their claim for rescission of ultra vires acts.

7

IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED that the Joint Use and Reciprocal Easements Agreement, dated October 21, 2003, by and between Premier Towers LP and the Commerce Towers Condominium Association, Inc. and recorded in the Harris County Clerk's Official Public Records of Real Property, File Number X209616 and Film Code 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 (the "JUA"), is ultra vires pursuant to Tex. Bus. Org. Code 20.002.

It is further ORDERED, ADJUDGED, AND DECREED that the JUA is rescinded and is null and void, *ab initio*.[7]

In these parts of the judgment, the trial court purported to rescind, and to render declaratory relief concerning, the JUA, that is, concerning Premier's easement. The Members do not dispute that this part of the judgment is a judgment against Premier.

That the declaratory and equitable relief is a judgment against Premier rather than a judgment against the Officers is supported by the agreed statement of facts, which is binding on the Members and the Officers. *See Panther Creek Ventures, Ltd. v. Collin Cent. Appraisal Dist*., 234 S.W.3d 809, 811 (Tex. App.—Dallas 2007, pet. denied). And because judgment was rendered on an agreed statement of facts, we conclusively presume that the Members and the Officers included in it all facts necessary for the presentation and adjudication of the Members' claims against the Officers. *See id.* Unlike a typical bench trial, there are no presumed findings in favor of a judgment rendered on an agreed statement of facts. *Id*; *cf. Members Mut. Ins. Co. v. Cutaia*, 460 S.W.2d 493, 496 (Tex. App.—Houston [14th Dist.] 1970, writ granted) ("The trial court had no authority to find a fact not included in or compelled by the agreed statement of facts."), *rev'd on other grounds*, 476 S.W.2d 278 (Tex. 1972). But the agreed statement of facts connects the Officers to the JUA only in that, at the time Frese signed the JUA on behalf of the Association, Frese was also the vice president of Premier's general partner, and he signed the JUA at Premier's

---

[7] This portion of the trial court's judgment is the "declaratory and equitable relief concerning the JUA" to which we refer in section III, *infra.*

8

direction. The Officers are neither parties to, nor third-party beneficiaries of, the JUA, and as far as the judgment and the agreed statement of facts show, the declaratory and equitable relief awarded by the trial court has no effect whatsoever on the Officers.

The same cannot be said of Premier. In the challenged portions of the judgment, the trial court purported to review, nullify, and rescind an instrument that created and conveyed to Premier a dominant estate twenty years ago—even though Premier has been dismissed from the suit and there are no claims against it.

In response to Premier's arguments that the trial court lacked jurisdiction to render judgment against a non-party, the Members contend that Premier remained a party and that the trial court properly continued to exercise jurisdiction over Premier, *despite* the Members' acknowledged lack of standing to assert any claims against Premier. According to the Members, the trial court's dismissal of Premier—and our affirmance of that dismissal—"did not sever the court's jurisdiction over Premier."

As a matter of law, this is simply wrong. Because standing is "a constitutional *prerequisite* to maintaining suit,"[8] lack of standing does not merely divest the trial court of jurisdiction; rather, the absence of standing means that the trial court never acquired subject-matter jurisdiction in the first place. Because "[c]ourts lack subject-matter jurisdiction to adjudicate disputes initiated by parties lacking standing,"[9] none of the Members' complaints about Premier were properly before the trial court for adjudication. Due to the absence of subject-matter jurisdiction, a trial court cannot grant relief to plaintiffs who lack standing. *See In re Abbott*, 601 S.W.3d 802, 805 (Tex. 2020) (orig. proceeding) (per curiam) ("[W]e conclude the judges lack

---

[8] *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001) (emphasis added).

[9] *Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 149 (Tex. 2015).

standing, which means the trial court lacked jurisdiction to order their requested relief, even temporarily."). An order that purports to do so is void as a matter of law. *See Gilbreath v. Horan*, __S.W.3d__, No. 01-17-00316-CV, 2022 WL 2720680, at *11 (Tex. App.—Houston [1st Dist.] July 14, 2022, no pet. h.) ("A party's lack of standing deprives a court of subject matter jurisdiction and renders any trial court action void.").

### III. CONCLUSION

Because the trial court lacked subject-matter jurisdiction to grant the Members declaratory and equitable relief concerning the JUA, we vacate that portion of the judgment[10] as void and dismiss the appeal.

/s/     Tracy Christopher
         Chief Justice

Panel consists of Chief Justice Christopher and Justices Bourliot and Hassan.

---

[10] *See* note 7, *supra*.

10